Larry **MARTINSON** and Vivian **Martinson,** Appellants,

v.

**ARCO ALASKA, INC., and BP Exploration (Alaska), Inc.,** Appellees.

No. S–8304.

Supreme Court of Alaska.

Oct. 8, 1999.

---

Richard L. Harren, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellants.

William A. Earnhart, Lane Powell Spears Lubersky, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Larry Martinson appeals the grant of summary judgment in favor of ARCO Alaska, Inc. (ARCO) and BP Exploration Alaska, Inc. (BPXA). We affirm the award of summary judgment to BPXA. Because we find that material facts are in genuine dispute with regard to the claim against ARCO, we reverse the grant of summary judgment in favor of ARCO and remand the case for further proceedings.

### II. FACTS AND PROCEEDINGS

Larry Martinson injured his left knee on December 19, 1993 while working on the North Slope. At the time of his injury, Martinson was employed as a water truck driver for Peak Oilfield Services, Inc. (Peak). Peak was an independent contractor working for ARCO hauling water at Prudhoe Bay. BPXA held a state permit to extract water from Vern Lake and Peak operated pursuant to that permit.

While filling his water truck at the Vern Lake water extraction site (Vern Lake site), Martinson slipped and fell on a "combination of water, snow and ice." This icy buildup had accumulated between the pump house located adjacent to the Vern Lake site and the ramp on which the water truck drivers backed down to reach the pump house. Martinson asserts that the icy buildup was caused by spillage from other water trucks whose drivers may have been careless in disconnecting the pump hose from their trucks.

The Vern Lake site was accessed by a pull-off from the main spine road. It is undisputed that ARCO maintained the spine road.

ARCO asserts that it had no responsibility to maintain the Vern Lake site and that it was exclusively maintained and controlled by Peak. Martinson disagrees, arguing that: (1) ARCO retained control of the Vern Lake site and thus owed a duty to him based on his status as an employee of an independent contractor; and (2) ARCO and BPXA owed a duty to him because they were the possessors of the Vern Lake site.

The superior court granted summary judgment in favor of ARCO and BPXA on both claims brought by Martinson. The court relied on the independent contractor doctrine:

> The Plaintiff was an employee of an independent contractor. Under Alaska law the Defendants cannot be liable for the Plaintiff's injuries unless they had control over the location where he was injured. The undisputed evidence demonstrates that the control of the Vern Lake site rested solely with Peak.

Martinson appeals.

### III. DISCUSSION

#### A. Standard of Review

This court reviews a grant of summary judgment de novo.[1] Summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] An issue of material fact exists when reasonable jurors could disagree in resolving the matter.[3] This court will make all reasonable inferences in favor of the non-moving party.[4]

#### B. A Reasonable Juror Could Find that ARCO Retained Control over the Vern Lake Site.

"Generally, an employer of an independent contractor owes no duty to the independent contractor's employees to protect those employees from the negligence of their own master."[5] However, we have held that

---

**1.** See *Ramsey v. Sand Point*, 936 P.2d 126, 129 (Alaska 1997) (citation omitted).

**2.** See *id.* (citation omitted).

**3.** See *McGee Steel Co. v. State*, 723 P.2d 611, 614 (Alaska 1986).

**4.** See *Ramsey*, 936 P.2d at 129 (citation omitted).

**5.** *Dahle v. Atlantic Richfield Co.*, 725 P.2d 1069, 1072 (Alaska 1986) (citation omitted).

an employer of an independent contractor has a common-law duty to provide a safe worksite to independent contractor employees if that employer supplies or controls the worksite.[6] This duty is commonly referred to as "retained control." This court expressly adopted the retained control principle in *Moloso v. State.*[7]

In *Moloso* this court delineated the "bright lines" of what constitutes retained control. An employer does not retain control if the employer only reserves the right to inspect the work to see that contract specifications are met, while the independent contractor controls how and when the work is done.[8] However, an employer does retain control if the employer (1) retains the right to direct the manner of the independent contractor's performance or (2) assumes affirmative duties with respect to safety.[9]

Whether an employer of an independent contractor has retained control and is thus subject to liability is normally a question of fact to be determined by a jury.[10] In this case, however, the superior court found that "[t]he undisputed evidence demonstrates that the control of the Vern Lake site rested solely with Peak."

Applying the *Moloso* guidelines, the superior court held: "[T]he Defendants could be liable for the Plaintiff's injuries if they either directed or supervised Peak's extraction of water from the Vern Lake site, or if they affirmatively assumed duties of removing snow and ice buildups from the pump houses."

This framing of the issues is sound. Moreover, the superior court correctly found that ARCO did not direct or supervise Peak's extraction of water from the Vern Lake site. But the superior court erred in finding that no genuine issues of material fact exist as to whether ARCO affirmatively assumed snow and ice removal duties at the Vern Lake site.

1. *Martinson presented no material facts which would allow a reasonable juror to find that ARCO directed or supervised Peak's water extraction at the Vern Lake site.*

Martinson testified that at the time of his accident he was employed by Peak, driving a Peak truck, supervised by a Peak employee, and dispatched by that employee to haul water to various sites at Prudhoe Bay. Martinson has not presented any evidence that ARCO directed or supervised him or that ARCO directed or supervised Peak's water extraction at the Vern Lake site.

2. *There are material facts which would allow a reasonable juror to find that ARCO affirmatively assumed snow and ice removal at the Vern Lake site.*

This court has held that two factors are relevant in determining whether the nature and extent of the retained control is sufficient to warrant imposition of liability: contractual provisions relating to retained control and actual exercise of control.[11] In the present case, there are material facts in dispute concerning both.

a. *Contract provisions*

Throughout each party's pleadings and the superior court's summary judgment memorandum and order there are references to various contracts between Peak and ARCO and modifications to those contracts. The contracts are complex and the parties interpret them differently. For example, ARCO and BPXA cite section 25 of contract AK91–0473 to support the claim that ARCO retained no control over the area in question. That section provides:

ARCO will provide the following services for Contractor personnel engaged in performance of Work at North Slope locations:

. . . .

---

**6.** *See Parker Drilling Co. v. O'Neill,* 674 P.2d 770, 776 (Alaska 1983).

**7.** 644 P.2d 205, 210–11 (Alaska 1982).

**8.** *See id.* at 211.

**9.** *See id.*

**10.** *See id.* at 212.

**11.** *See Dahle,* 725 P.2d at 1072 (citation omitted).

[Section] v. Snow and ice removal and other road maintenance for access roads normally used for ARCO operations between permanent facilities, Work sites and other locations utilized in support of Work. Contractor shall be responsible for all other required snow and ice removal.

ARCO and BPXA assert that the Vern Lake site was one of the areas in which the contractor, Peak, was contractually responsible for snow and ice removal because it was not an access road normally used for work. Yet Ronnie Lee, one of Peak's supervisors, testified at his deposition with regard to snow and ice removal at Vern Lake:

Well, there was never anything in the contract, it was just a gentlemen's agreement that we [Peak] would maintain cleaning it up. And it was just the way we work up there. I mean, the companies help one another out to keep the water holes, because we're [Peak] not the only ones using that water hole. *And ARCO will clean it out* or Peak will clean it out. And mainly they're the main contractors up there any more. (Emphasis added.)

This statement, when read with all reasonable inferences drawn in favor of Martinson (as the court must on a motion for summary judgment brought by ARCO), lends credence to Martinson's claim that ARCO retained control of ice and snow removal at the Vern Lake site.

### b.   *Actual exercise of control*

Martinson has presented evidence that ARCO actually exercised control over at least a portion of the snow and ice removal at the Vern Lake site during the winter of 1993–94.

First, another Peak water truck driver, Albert Jim McCants, stated in his deposition that he saw snow removal equipment, scratchers, road graders, snow blowers, and loaders with "big stickers" on the side that said "ARCO Heavy Equipment" removing snow and ice from the Vern Lake site. This equipment was operated by Peak employees under a different contract than the one under which Martinson and McCants were em-

ployed. McCants testified that when snow and ice were built up at the Vern Lake site, he would call the Peak dispatcher and ask him to call "Heavy Equipment," meaning ARCO heavy equipment, to come and clean up the site, and that the equipment would come. There is disagreement over whether Peak dispatchers directly sent Peak employees in ARCO's vehicles to the site or whether the ARCO dispatcher referred to as the "106" sent the equipment to the site. This is a material fact in dispute.

Second, Martinson testified that two or three days before his accident he saw ARCO heavy equipment removing snow from the Vern Lake site. It is unclear whether ARCO or Peak directed that equipment to the Vern Lake site. This too is a material fact in dispute.

Third, Martinson presents ARCO's dispatch records from 1993–94, which show that on seven different occasions ARCO dispatched snow removal and scratching equipment to the Vern Lake site. ARCO contends that this was done at Peak's request and "only ... in emergency situations such as during wind storms." But the dispatch record shows that ARCO sent equipment to Vern Lake on December 21, 1993 and again on December 24, 1993; in neither case does it appear that an emergency situation existed. Both of these incidents occurred within five days of Martinson's injury on December 19, 1993.

In sum, Martinson has presented enough evidence to withstand summary judgment on his retained control theory of liability against ARCO.

### C.   *Martinson Has Waived Appellate Consideration of His Claim that ARCO and BPXA Owed Him a Duty Because They Were the Possessors of Vern Lake.*

██ We will not consider arguments which are inadequately briefed on appeal. "[W]here a point is given only a cursory statement in the argument portion of the brief, the point will not be considered on appeal." [12]   Martinson's discussion of this

**12.** *Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (citations omitted).

point in his brief is cursory at best: He asserts in conclusory fashion that ARCO and BPXA are the "possessors of Vern Lake." No further support for that assertion is found in the brief. Because Martinson has waived consideration of this point by failure to brief it adequately, and this is the only basis upon which Martinson argues that BPXA is liable to him, summary judgment in BPXA's favor must be affirmed.

## IV. CONCLUSION

Because there are material facts in dispute concerning whether ARCO retained control, both contractually and in actual practice, over snow and ice removal at the Vern Lake site, ARCO was not entitled to summary judgment. The grant of summary judgment to ARCO is REVERSED and the case REMANDED for further proceedings consistent with this opinion. Because no fact issues are in dispute concerning BPXA, the award of summary judgment to BPXA was proper, and is AFFIRMED.