FRANK E., Appellant,

v.

STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, DIVISION OF FAMILY & YOUTH SERVICES, Appellee.

No. S–10707.

Supreme Court of Alaska.

Sept. 26, 2003.

J. Randall Luffberry, Palmer, for Appellant.

Michael G. Hotchkin, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Erica Kracker, Kracker Law Office, Palmer, Guardian Ad Litem.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The superior court terminated a father's parental rights. The father argues that the court erred in (1) finding that the state had made reasonable efforts to reunify him with his children and (2) finding that termination served the best interests of his children. Because the superior court did not err in finding that the state made reasonable reunification efforts and in considering the best interests of the children, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Frank E.[1] is the father of the three children involved in this case: daughter Beth E., born in 1995; son Frank E. Jr., born in 1997; and daughter Brianna E., born in 1999. Frank and his wife Ann E.[2] moved to Alaska in 1997.

In November 2000 Frank and Ann were arrested for operating a methamphetamine lab, and Frank pled no contest to misconduct involving a controlled substance in the fourth degree for possession of methamphetamine. He was sentenced to four years, with nineteen months to serve.

Following the arrest, the state took custody of the children at issue in this appeal, while Frank's son from a previous marriage, Zale, went to live with his biological mother. Shortly thereafter, Beth, Frank Jr., and Brianna began living with Diane P., who is Frank's mother. Diane has already adopted Cathy P., another of Frank's children, after Frank's parental rights to her were terminated. Diane will adopt Beth, Frank Jr., and Brianna if Frank's parental rights are terminated. Shortly after Frank's incarceration the state created a case plan for him which focused on substance abuse treatment, parenting classes, and family violence classes that could only be taken after his release from incarceration. The original case plan did not include any reference to programs available at the prison at which Frank was housed, but Frank took advantage of some of the anger management classes, parenting classes, and Alcoholics Anonymous/Narcotics Anonymous meetings available at the prison.

### B. Proceedings

On February 27, 2001 the state filed a petition to terminate Frank's parental rights to Beth, Frank Jr., and Brianna. Frank stipulated that the children were children in need of aid but contested the termination of his parental rights. After proceeding with part of the termination trial, Superior Court Judge Eric Smith issued an order on June 6, 2001 continuing the trial until after Frank's scheduled release from prison so that Frank would have an opportunity to resolve his problems and get his children back by completing his case plan.

Frank was scheduled to be released from prison in November 2001, but was not released because he was indicted for sexual abuse of his daughters Cathy and Beth. This made it impossible for him to comply with the case plan within the given time. Following Frank's indictment, the state revised his case plan to include more treatment options during his time in prison. Frank was convicted of sexual abuse of Cathy and attempted sexual abuse of Beth and sentenced to fourteen years, with twelve years to serve. His sentence includes ten years of probation, one condition of which is that he have no contact with persons under the age of eighteen without the written permission of his probation officer. He will be eligible for

---

1. We use pseudonyms to protect the privacy of those involved.

2. Ann is the mother of the three children involved in this case. She has already had her parental rights terminated and is not the subject of this appeal.

release in November 2009, at which point his children would be fourteen, twelve, and ten years old. Frank appealed his conviction on July 18, 2002; at this time the parties are still awaiting the transcript from his trial.

On July 17, 2002 the superior court terminated Frank's parental rights to Beth, Frank Jr., and Brianna. The superior court based its decision on two independent grounds for termination, AS 47.10.080(o)[3] and 47.10.088.[4] Frank appeals the superior court's findings regarding elements of both grounds for termination. He appeals the court's decision to proceed with termination of his parental rights prior to the resolution of his merit appeal of his conviction for sexual abuse and attempted sexual abuse. He argues that his conviction and scheduled incarceration were essential to termination under AS 47.10.080(o) and formed one of several bases for termination under 47.10.088. Frank also appeals the termination of his parental rights under AS 47.10.088, arguing that the superior court erred in finding that the state made reasonable efforts to reunify him and his children, and in its consideration of the best interests of his children.

## III. STANDARD OF REVIEW

■ "We apply the clearly erroneous standard when reviewing the factual findings supporting the termination of a parent's right to raise his or her children."[5] We determine that a finding is clearly erroneous "when a review of the entire record leaves us 'with a definite and firm conviction that the superior court has made a mistake.'"[6] In determining whether a finding is clearly erroneous, "we view the evidence in the light most favorable to the party prevailing below."[7]

■ We review whether the superior court's findings comport with the requirements of the CINA statutes and rules under the *de novo* standard of review.[8] Under this standard, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

The superior court terminated Frank's parental rights under both AS 47.10.088 and AS 47.10.080(o), which provide alternate and independent bases for the termination. In order for Frank to prevail we must find that termination of his parental rights was im-

---

3. AS 47.10.080(o) provides:

For purposes of terminating a parent's parental rights under the standards in (c)(3) of this section, the court may determine that incarceration of the parent is sufficient grounds for determining that a child is a child in need of aid under AS 47.10.011 as a result of parental conduct and that the parental rights of the incarcerated parent should be terminated if the court finds, based on clear and convincing evidence, that
(1) the period of incarceration that the parent is scheduled to serve during the child's minority is significant considering the child's age and the child's need for an adult's care and supervision;
(2) there is not another parent willing and able to care for the child; and
(3) the incarcerated parent has failed to make adequate provisions for care of the child during the period of incarceration that will be during the child's minority.
This statute was added in 1996 "to respond to the Alaska Supreme Court's invitation in *A.M. v. State of Alaska*, 891 P.2d 815 (Alaska 1995) and *Nada A. v. State of Alaska*, 660 P.2d 436 (Alaska 1983) to create a statutory basis for making incarceration a factor that can be considered in termination proceedings concerning children in need of aid." Ch. 89, § 1, SLA 1996.

4. AS 47.10.088 generally prescribes the findings that a court must make before terminating parental rights. The court must find that a child is in need of aid under AS 47.10.011, that the parent has not remedied the situation, that the state made reasonable efforts to provide family support services so as to avoid out-of-home placement or to safely return the child home under AS 47.10.086, and that termination is in the best interests of the child.

5. *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 650 (Alaska 2003).

6. *Id.* at 650–51 (quoting *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002)).

7. *In re J.L.F. & K.W.F.*, 828 P.2d 166, 170 n. 12 (Alaska 1992) *overruled on other grounds by In re S.A.*, 912 P.2d 1235 (Alaska 1996).

8. *P.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1127, 1130 (Alaska 2002).

9. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

proper under both of these independent justifications. We decline to reach the question of whether a parent's conviction can be used to terminate his or her parental rights under AS 47.10.080(*o*) before an appellate court has reviewed and affirmed the conviction, because we find that the superior court did not err by terminating Frank's parental rights under AS 47.10.088.[10] We turn now to consideration of that statute.

Alaska Statute 47.10.088 sets out the procedural steps involved in a termination of parental rights. It provides in relevant part that:

(a) Except as provided in AS 47.10.080(*o*), the rights and responsibilities of the parent regarding the child may be terminated for purposes of freeing a child for adoption or other permanent placement if the court finds

(1) by clear and convincing evidence that

(A) the child has been subjected to conduct or conditions described in AS 47.10.011; and

(B) the parent

(i) has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or

(ii) has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; and

(2) by preponderance of the evidence that the department has complied with the provisions of AS 47.10.086 concerning reasonable efforts.

. . .

(c) In a proceeding under this chapter involving termination of the parental right of a parent, the court shall consider the best interests of the child.

Frank challenges two aspects of the termination of his parental rights under AS 47.10.088: whether the state made reasonable efforts to reunite him and his children in accordance with AS 47.10.088(a)(2), and whether the superior court properly considered his children's best interests in accordance with AS 47.10.088(c).

## A. The Superior Court Did Not Err in Holding that the State Met Its Duty To Make Reasonable Efforts To Reunite Frank and his Children Under AS 47.10.086.

Frank first asserts that the superior court's termination of his parental rights under AS 47.10.088(a)(2) was improper because the state failed to prove that it had complied with the requirements of AS 47.10.086(a), which establishes the state's duty to make reasonable efforts to provide Frank with services designed to reunify him with his children.[11]

The superior court found that the requirements of AS 47.10.086 had been met because: (1) Frank's conviction for attempted sexual abuse of Beth made reunification efforts un-

10. We decline to decide this issue for two reasons: First, our affirmance of termination under AS 47.10.088 makes consideration of termination under AS 47.10.080(*o*) moot. Second, Frank fails to adequately brief the potential constitutional issues involved in terminating parental rights based on a conviction when that conviction has not been affirmed on appeal. *See, e.g., Martinson v. ARCO Alaska, Inc.,* 989 P.2d 733, 737 (Alaska 1999).

11. AS 47.10.086(a) provides, in relevant part, that

the department shall make timely, reasonable efforts to provide family support services to the child and to the parents or guardian of the child that are designed to ... enable the safe return of the child to the family home, when appropriate ... The department's duty to make reasonable efforts under this subsection includes the duty to

(1) identify family support services that will assist the parent or guardian in remedying the conduct or conditions in the home that made the child a child in need of aid;

(2) actively offer the parent or guardian, and refer the parent or guardian to, the services identified under (1) of this subsection; the department shall refer the parent or guardian to community-based family support services whenever community-based services are available and desired by the parent or guardian; and

(3) document the department's actions that are taken under (1) and (2) of this subsection.

necessary under AS 47.10.086(c)(1),[12] (2) the length and conditions of Frank's sentencing for the sexual assault made reunification efforts unnecessary under AS 47.10.086(c)(10),[13] and (3) in any event, the state did make reasonable efforts to reunify Frank and his children. Frank challenges all three of these bases, any of which is a sufficient basis upon which to conclude that the state met the reasonable efforts requirement. Because we find that the state made reasonable efforts to reunify Frank and his children in accordance with AS 47.10.086(a), we decline to address Frank's claims that the superior court erred by holding that the state was exempted from its responsibility to provide such efforts by AS 47.10.086(c)(1) and AS 47.10.086(c)(10).

▪ Frank challenges Judge Smith's finding that the state met its obligation to make reasonable efforts to reunite the family. The court found that "[e]ven if reasonable efforts were required, the department made those efforts, at least prior to [Frank's] sexual abuse conviction." It based this conclusion on its finding that the state "prepared a case plan requiring treatment of the substance abuse and anger management issues. [Frank] was afforded access to a number of programs while he was incarcerated. In short, the department did what it could, given the constraints placed by the fact that [Frank] was incarcerated." Frank alleges that the state failed to identify services in accordance with AS 47.10.086(a)(1) and to actively offer those services in accordance with AS 47.10.086(a)(2), and that this failure

made the superior court's finding that the state made reasonable efforts toward reunifying Frank and his children clearly erroneous.[14]

The state's efforts to provide the services mandated by AS 47.10.086(a) is broken down by the parties into two periods of time. The first of these is the period between Frank's incarceration for methamphetamine possession following his November 2000 arrest and his indictment for sexual abuse, as the indictment postponed his anticipated November 2001 release from prison for the methamphetamine offense. The second period is the time between his indictment for sexual abuse and the termination of his parental rights on July 17, 2002.

Frank contends that Dr. Lindeman, a social worker with the Department of Health and Social Services, Division of Family and Youth Services (DFYS), who was responsible for fulfilling the state's duty to identify reunification services in accordance with AS 47.10.086(a)(1), made little or no effort to identify and learn about treatment options available in Frank's prison prior to Frank's indictment for sexual abuse. He argues that the superior court erred by finding that the reasonable efforts requirement had been satisfied, and that its termination of his parental rights should be reversed because of this failure. Frank next contends that the state violated AS 47.10.086(a)(2)'s requirement that it "actively offer" the parent services identified under subsection (1). Frank argues that AS 47.10.086(a)(2) "require[s] at a minimum that DFYS communicate with the parent in a

12. AS 47.10.086(c) provides, in relevant part:
    The court may determine that reasonable efforts of the type described in (a) of this section are not required if the court has found by a preponderance of the evidence that
    (1) the parent or guardian has subjected the child to circumstances that pose a substantial risk to the child's health or safety; these circumstances include abandonment, sexual abuse, torture, chronic mental injury, or chronic physical harm[.]

13. AS 47.10.086(c) provides, in relevant part:
    The court may determine that reasonable efforts of the type described in (a) of this section are not required if the court has found by a preponderance of the evidence that
    . . .

    (10) the parent or guardian is incarcerated and is unavailable to care for the child during a significant period of the child's minority, considering the child's age and need for care by an adult.

14. Frank also contends that the state failed to satisfy AS 47.10.086(a)(3)'s mandate to document its actions under AS 47.10.086(a)(1)-(2). But he fails to make any argument, other than that implied by his argument that the state failed to identify and offer services to him, concerning the state's alleged failure. Because "[w]e will not consider arguments which are inadequately briefed on appeal," we hold that Frank has waived any consideration of the adequacy of the state's documentation of its efforts in its case plan. *Martinson*, 989 P.2d at 737.

meaningful way the specific services available, and inform the parent how those services will help. Also, DFYS should inform how the parent can avail himself of those services." In sum, Frank argues that the state attempted to terminate his parental rights without giving him an opportunity to remedy the conduct that caused his children to be in need of aid.

The state fails to respond effectively to Frank's argument that its original case plan was inadequate. It appears to recognize that it did not identify or actively offer any programs to Frank during his incarceration for methamphetamine possession in the form of an organized case plan aimed at reunifying Frank and his children. Indeed, the original case plan for the time in which Frank was incarcerated focused exclusively on services that were available only *after* his release from prison in November 2001, whereas the state attempted to terminate Frank's parental rights *before* his anticipated November 2001 release by filing its petition to terminate parental rights on February 27, 2001 and arguing for immediate termination at the June 2001 termination trial. (In fairness to the state, its original case plan was formulated at a time when it was assumed that Frank would be released from prison in less than two years. His subsequent indictment for sexual abuse dramatically altered that expectation.) The state argues that it fulfilled its obligation to identify and actively offer services to Frank because the prison staff publicized the programs available to Frank while he was incarcerated.

But the test of whether the state made reasonable efforts to reunify Frank and his children is not limited to this particular segment of time. Instead, we examine whether the state's reunification efforts, when looked at in their entirety, satisfy the requirements of AS 47.10.086(a).

Though the state's failure to identify and offer programs to Frank before the planned termination would generally violate the state's duty under AS 47.10.086, the failure was harmless in this case because the superi-

or court continued the June 6, 2001 termination trial specifically to allow Frank an opportunity to complete his case plan. The post-release portion of the original case plan fulfilled AS 47.10.086(a)(1) and (2)'s requirement that the state identify and offer reunification services to Frank, as it called for Frank to enter inpatient substance abuse treatment, attend Alcoholics Anonymous/Narcotics Anonymous (AA/NA), and attend parenting classes. Contrary to Frank's suggestion, the requirement that the state offer reunification services is fulfilled by setting out the types of services that a parent should avail himself or herself of in a manner that allows the parent to utilize the services. In this case, the above services were reasonably offered to Frank because the case plan identified them in a manner that allowed Frank to attend appropriate AA/NA meetings and apply to at least two appropriate inpatient substance abuse treatment programs.

The superior court ensured that Frank would have meaningful access to these properly identified reunification services that were offered to Frank by continuing the termination trial until January 22, 2002 in order to give Frank the opportunity to complete the post-release services specified in his case plan. As the superior court stated, the continuance "will give the court concrete information regarding [Frank's] ability and desire to remedy the conditions that placed his children so badly at risk, and will give him the necessary reasonable time in which to do so." By providing a reasonable opportunity for Frank to remedy the behavior that caused his children to be in need of aid, the continuance cured the state's attempt to terminate Frank's parental rights without providing him with the reasonable efforts to reunify him and his children mandated by AS 47.10.086(a).[15]

Finally, we examine the state's efforts to identify and offer programs to Frank after his original case plan was rendered moot when his incarceration was extended past the originally scheduled November 2001 release

15. The parties also dispute the adequacy of visitation in this case, but visitation was properly discontinued for the majority of Frank's incar- ceration because of credible allegations of sexual abuse against Frank and because Diane moved to California with the children.

date due to his prosecution for sexual abuse. Though Frank does not focus on this stage of the proceedings, several of his arguments attack the sufficiency of the state's efforts to identify and offer services aimed at reunifying him and his children. He argues that Dr. Lindeman's efforts to identify services after the state filed its petition to terminate Frank's parental rights were "perfunctory at best." The state contends that it properly identified plans available in prison when it became apparent that Frank would be imprisoned past his expected November 2001 release date.

Just as we held that the original case plan as extended by the court offered reunification services in a manner that allowed Frank to avail himself of them, we hold that the revised case plan satisfied the requirements of AS 47.10.086(a), after the original extended case plan was made irrelevant by Frank's continued incarceration.[16] Dr. Lindeman testified to the November 2001 changes in the case plan, stating that "when it became evident that the incarceration was going to extend beyond the November time period, then a treatment plan was drafted up which was modified to reflect both while he was in incarceration and while he was out of incarceration." The inclusion of services available in prison is also seen in the revised case plan, which, in contrast to previous plans, provided that "[w]hile awaiting release from jail he will participate in any groups offered in jail in the areas of anger management, substance abuse or psychotherapy." Furthermore, though Frank argues that termination was improper because the state did not take a more active role in recommending specific services, he does not contend that he was unable to identify the services available in the specified areas, and in fact demonstrated the ability to do so by taking advantage of an anger management class during his incarceration. We therefore hold that the state's identification of specific areas of reunification services is a sufficient basis for the court's finding that "[t]he Department ... met its burden to prove by a preponderance of the evidence that it had made the reasonable efforts required by AS 47.10.086."

**B. The Superior Court Did Not Err in Finding that Termination of Frank's Parental Rights Was in the Children's Best Interests.**

■ Alaska Statute 47.10.088(c) mandates that "[i]n a proceeding under this chapter involving termination of the parental right of a parent, the court shall consider the best interests of the child." Frank contends that the superior court's finding that immediate termination of his parental rights was in the children's best interests was clearly erroneous because delaying termination until the resolution of his appeal from his conviction for sexual abuse and attempted sexual abuse is in the best interests of his children. Frank claims that his children would not suffer significant harm from the delay in permanency caused by waiting for the resolution of his criminal appeal because their placement with Diane would be unaffected. He also argues that immediate termination is not in the children's best interests because they might be harmed by the possible overturning of their adoption under Alaska Civil Rule 60(b)(5).[17] But these possibilities are insufficient to overturn the superior court's factual finding, as we will overturn factual findings only when they are clearly erroneous.[18]

The state points to the testimony of Dr. Lindeman, who testified that the state decided to move for termination because the "necessity to get [the children] stability and to

---

**16.** Frank does not contend that reasonable efforts should have been provided to him after his convictions for sexual abuse of Cathy and attempted sexual abuse of Beth.

**17.** Alaska R. Civ. P. 60(b)(5) provides that a court may relieve a party from a final judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Frank argues that, should his conviction be overturned on appeal, he would be able to attack the termination of his parental rights under this rule. We express no opinion as to whether a termination of parental rights can be overturned under Rule 60(b)(5).

**18.** *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 650–51 (Alaska 2003).

maintain the consistency of stability was very paramount." Frank responds that Dr. Lindeman's testimony established that the children are already well-bonded with their grandmother, and that this supports his contention that little benefit is gained by freeing the children for adoption because they will maintain the current placement with his mother regardless of whether they are adopted. After hearing Dr. Lindeman's testimony, the superior court found on June 6, 2001 that "the children are quite young and ... it is in their best interests to have some finality in their lives with respect to who actually will be their parent." Though the superior court did not terminate Frank's parental rights at that time, its finding that "an additional delay of seven months will not so adversely affect the children that the trial, and hence a decision on the Department's petition, cannot be continued," recognized that finality at some point was an important aspect of the children's best interests.[19] This finding that finality was in the children's best interests was not clearly erroneous, and a review of Dr. Lindeman's testimony does not leave us " 'with a definite and firm conviction that the superior court has made a mistake.' "[20]

The superior court then applied this finding in its July 17, 2002 order terminating Frank's parental rights. The court found that termination of Frank's parental rights was proper because:

> The children are living with their grandmother, who wishes to adopt them. Their father will be in jail for most of their childhood. They need the permanency promised by adoption, not the uncertainty imposed by a possible reunion with a father with significant untreated problems whom they will not see for years. It is absolutely not in their interest to have to wait those years for this matter to be resolved. They need to be able to get on

with their lives; termination of [Frank's] rights and adoption by their grandmother will enable them to do so.

While this finding that immediate termination of Frank's parental rights is at least partially based on an assumption that Frank will not win his criminal appeal, it also clearly recognizes that a delay of years in providing the children with finality in their parental situation is not in their best interests. The delay and resulting harm to the children occasioned by criminal appeals that will take years is real. This finding of harm is amply supported in Dr. Lindeman's testimony regarding the importance of providing the children with stability; it is not clearly erroneous. We hold that the superior court did not err by finding that termination of Frank's parental rights was in the children's best interests.

## V. CONCLUSION

Because the superior court did not err in determining that the state provided reasonable efforts aimed at reunifying the father and his children or in finding that termination of the father's parental rights was in the best interests of his children, we AFFIRM the decision of the superior court.

MATTHEWS, Justice, concurring.

MATTHEWS, Justice, concurring.

When a parent has been sentenced to a prison term that constitutes much of the minority of the parent's children, efforts to provide social services to the parent that have as their objective reunification of the parent with the children are necessarily futile. Because such efforts cannot succeed, it is difficult to describe them as timely and reasonable, the terms used in AS 47.10.086(a). But the legislature has recognized this problem and does not require fami-

---

19. Frank's argument that the superior court's July 17, 2002 termination of his parental rights should be overturned because it is inconsistent with its June 6, 2001 finding that a seven-month delay was in the children's best interests is without merit. The June 6, 2001 order weighed the ongoing harm caused by a seven-month delay in determining that Frank should be given an opportunity to remedy his problems. That finding

is not inconsistent with a later finding that an additional, much more significant delay, until the resolution of his criminal appeal, would be harmful.

20. *G.C.*, 67 P.3d at 650–51 (quoting *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002)).

ly reunification efforts when the "incarceration that the parent is scheduled to serve during the child's minority is significant considering the child's age and the child's need for an adult's care and supervision." AS 47.10.080(*o*)(1). Similarly, under AS 47.10.086(c)(10) the court may determine that the reasonable efforts ordinarily required may be dispensed with under the same circumstances.

Frank is scheduled to be incarcerated for twelve years, with an additional ten years of probation during which he is not allowed contact with minors. This obviously qualifies as a significant period of his children's minority and the trial court so found. Because this finding is sustainable, the state was not required to provide reunification services to Frank and there is no need to consider whether the services that the state afforded Frank were reasonable and timely. I would affirm the judgment of the superior court on this basis.

Frank argues that it is unfair to waive the reasonable efforts requirement based on AS 47.10.086(c)(10) until his criminal appeal has been decided. In my opinion this argument lacks merit. A conviction is a judgment and as such it is final when it is entered in the superior court. Both direct and collateral consequences may be imposed based on the conviction regardless of the pendency of an appeal: "We have repeatedly held that the pendency of an appeal is irrelevant for the purposes of res judicata and collateral estoppel."[1] In *A.A. v. State* we recognized the risks of relying on a conviction pending appeal, but stated that "a trial court should have the discretion to proceed to a termination trial without a final ruling on a parent's criminal appeal."[2] This statement applies here.

It is of course possible that Frank's criminal conviction might be reversed on appeal. Speaking statistically, the chances are slim. According to the clerk of court, about eighty-two percent of criminal appeals were totally affirmed by the Alaska Court of Appeals over the last fiscal year. A number of cases in the opposite eighteen percent column were vacated or reversed only in part and did not result in a reversal of the conviction on the most serious charges. Further, when convictions on major charges are reversed, the charges are ordinarily retried, and the offender is often reconvicted. For those rare cases in which an offender is ultimately acquitted of major charges, Civil Rule 60(b)(5) offers the possibility of relief from a termination judgment that has been entered based on the conviction.

As this case illustrates, the appellate process is time consuming.[3] It is now statutory policy that young children be expeditiously placed into permanent homes.[4] If the waiver of reunification provisions contained in AS 47.10.080(*o*)(1) and AS 47.10.086(c)(10) are to be given effect consistent with today's expedited permanent placement policy, a final criminal conviction in the superior court should be the event that triggers a waiver rather than a decision of the court of appeals.

Because the superior court properly found that the reasonable efforts requirement did not apply because of Frank's significant incarceration, and because I agree with the opinion of the court that the superior court did not err when it found that the termination was in the best interests of the children, I agree that the termination judgment should be affirmed.

1. *Wyatt v. Wyatt*, 65 P.3d 825, 831 (Alaska 2003).

2. 982 P.2d 256, 260 (Alaska 1999).

3. We are advised that Frank's criminal appeal has not yet been briefed.

4. AS 47.05.065(5); *see S.H. v. State*, 42 P.3d 1119, 1125 (Alaska 2002) ("The timeliness of a permanent stable placement for the children is paramount....").