NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DONNY P., | ) |
| | ) Supreme Court No. S-19382 |
| Appellant, | ) |
| | ) Superior Court No. 1JU-23-00009 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF FAMILY & COMMUNITY | ) |
| SERVICES, OFFICE OF | ) No. 2130 – January 14, 2026 |
| CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Marianna C. Carpeneti, Judge.

Appearances: Olena Kalytiak Davis, Office of Public Advocacy, Anchorage, for Appellant. Jennifer Teitell, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.     INTRODUCTION

The Office of Children's Services (OCS) removed a baby from her parents after her umbilical cord tested positive for methamphetamine. Roughly six months

---

\*     Entered under Alaska Appellate Rule 214.

later, the baby's father, who was on felony probation, was incarcerated for possessing and testing positive for methamphetamine. The father subsequently rejected probation and elected to serve the remainder of a previously suspended prison term. Although OCS attempted to work with the father toward reunification, his lengthy incarceration — including periods spent in protective custody — limited the efforts it was able to make. After ruling that OCS had made reasonable efforts to support reunification, the superior court eventually terminated the father's parental rights.

The father now appeals the court's determination that OCS made reasonable efforts to reunify the family. Seeing no error, we affirm.

## II.    FACTS AND PROCEEDINGS

Donny P. and Julie N. are the parents of Sarina P., born in February 2023.[1] When Sarina was born, Donny was on felony probation for a past manslaughter conviction. Donny was initially sentenced to thirteen years in prison, with six years suspended, but by the time Sarina was born, Donny had served approximately four additional years due to repeated probation violations.

Days after Sarina's birth, OCS received notice that her umbilical cord had tested positive for methamphetamine and marijuana. When neither parent could credibly explain the test results, OCS assumed emergency custody of Sarina and filed an emergency petition to adjudicate her a child in need of aid. OCS investigated placing Sarina with family members, but neither parent could identify a safe placement for her. Donny told OCS he wanted Sarina placed with his sister. But his sister was unwilling to take both Sarina and her older half-sister, with whom she was bonded.

Upon Sarina's removal, OCS provided visitation with both parents. OCS offered both parents a visit the day after Sarina was removed, but neither parent attended. After learning that one of Donny's probation conditions was to have no

---

[1]    Pseudonyms are used to protect the family's privacy.

unsupervised contact with minors five years old or younger, OCS worked with Donny's probation officer to assure that he could visit Sarina while remaining compliant with the terms of his probation. OCS then arranged twice weekly visits that continued until Donny was incarcerated in October 2023.

OCS's early efforts to case plan were somewhat delayed. During an April status hearing, Donny's attorney raised the fact that he did not yet have a case plan and insisted that Donny wanted one "as soon as possible." Following the superior court's probable cause determination, the case was transferred from its initial assessment worker to another caseworker. The new caseworker then initiated case planning via letter.

At the next hearing in June, Donny still did not have a case plan. The caseworker sent him another letter that same month that included a "compliance-based case plan."[2] That same day, however, Donny was arrested for using methamphetamine, his eleventh probation violation. A week later, the caseworker sent Donny a case plan prepared without Donny's input.

Once Donny was released in mid-July, the caseworker met with him to case plan together. The July case plan included two goals: (1) living a sober and healthy lifestyle to support Sarina's safety; and (2) maintaining a bond with Sarina. The case plan required, among other things, that Donny participate in parenting classes and attend family visits to strengthen his bond with Sarina.

In August, Donny was again arrested on allegations of drug and alcohol use. The next month, the caseworker sent him a letter that enclosed his case plan, requested signed releases of information, and scheduled a meeting for early October.

---

[2] A caseworker later explained that 'compliance-based' case plans are designed for uncooperative parents or for those with whom OCS has not yet been able to meet.

In October, Donny stipulated that Sarina was a child in need of aid due to his periods of incarceration.[3]  During that month, Donny also refused to submit to a urinalysis (UA) after consuming marijuana, and was remanded to prison.  He subsequently rejected probation, electing to serve the remainder of his manslaughter sentence, about ten months.

The caseworker encouraged Donny to write Sarina letters and delivered the letters to Sarina.  OCS also sent Donny three letters regarding his case plan, releases of information, and the court case while he was in prison.  Donny did not try to enroll in any classes while in prison.

In late 2023, Donny transferred from prison to a halfway house.  But after using methamphetamine while at the halfway house, he was remanded to prison again in February 2024.  While in prison, Donny completed two substance abuse treatment assessments which ultimately recommended intensive outpatient substance abuse treatment.  He did not participate in any classes.  During this time period, OCS petitioned to terminate Donny and Julie's parental rights.

In March 2024, the court considered reunification efforts at a permanency hearing.  Having received little testimony during the hearing about OCS's efforts to work with Donny, the court found that OCS had not made reasonable efforts at that time.  The court was concerned that OCS's failure to update Donny's July 2023 case plan while he was incarcerated made it impossible for him to comply with the case plan.  But the court also found that Sarina remained in need of aid, that it was in her best interest to remain in OCS custody, and that Donny had not made substantial progress to remedy the conditions rendering Sarina in need of aid.

Following the permanency hearing, the caseworker contacted the prison to arrange a phone call with Donny, but he refused to speak with her without his attorney

---

[3]    *See* AS 47.10.011(2).

present. The caseworker subsequently worked with Donny's attorney to arrange two case planning meetings.

The caseworker ultimately updated Donny's case plan, recommending that he also undergo a behavioral health assessment and pursue parenting classes at the prison. Donny attempted to enroll in parenting classes and was waitlisted. He also underwent an additional substance abuse assessment recommending inpatient substance abuse treatment, and expressed a willingness to enroll in that treatment. But shortly thereafter, Donny voluntarily entered protective custody following an altercation with inmates, which severely limited his access to services.

The caseworker sent Donny pictures of Sarina and attempted to contact him about his case plan and court case. The caseworker reached out to the prison to identify and understand the programs in which Donny was engaged. Donny initially refused to sign a release allowing the prison to share information, but he ultimately signed the release. The prison then shared that Donny was unable to access programming at that time.

In May 2024, the caseworker sent Donny another letter updating him on the court case, again attaching his case plan and encouraging him to request access to programs through his institutional probation officer. The caseworker also facilitated a videoconference visit with Sarina at the end of that month.

Donny's institutional probation officer checked with him every 30 days between June and August 2024 to determine whether he wanted to return to the general population where more services were available, but Donny decided to remain in segregation and he made no further attempts to engage in programming. During this period, OCS arranged five videoconference visits, three of which actually occurred.[4]

---

[4] The OCS caseworker explained that visits were short, often only 15 minutes, due to their occurrence on a screen, Sarina's age, and the fact that she was not "quite aware of [Donny] yet."

Donny was released from prison on August 6, 2024. Six days later, the caseworker met with him to update his case plan. The three primary goals of the plan were to address Donny's substance abuse issues, stabilize his life, and develop a bond with Sarina. The caseworker referred him to parenting classes, wrote a housing letter, contacted the Infant Learning Program and an area behavioral health treatment provider, provided Donny with a bus pass, and gave Donny rides to the job center and court. OCS also directed Donny to submit to random UAs, obtain his driver's license and stable employment, and attend counseling. Although Donny enrolled in behavioral health treatment, he soon started missing appointments because he was sick and because, in his own words, he believed that "there's nothing mandatory about any of it."

OCS also resumed twice weekly visitation between Donny and Sarina shortly after his release. But Donny soon began missing those visits as well. He initially provided explanations for his absences, but then continued missing visits without communicating. Donny also missed multiple UAs.

The superior court held a termination trial over three days in August and October 2024.[5] OCS presented the testimony of three probation officers, three OCS employees, the counselor who observed Donny's visitation with Sarina, and Donny himself.

In January 2025, the superior court terminated Donny's parental rights. The court found by clear and convincing evidence that Donny had caused Sarina to be a child in need of aid due to parental substance abuse and a risk of substantial physical harm[6] and that Donny had failed to remedy his conduct causing Sarina to be in need of aid. It found by a preponderance of the evidence that termination of Donny's rights

---

[5]    Julie relinquished her parental rights on the eve of trial.

[6]    *See* AS 47.10.011(6), (10).

was in Sarina's best interest. And it determined by clear and convincing evidence that OCS had made timely, reasonable efforts to engage Donny in reunification services.

In making its reasonable efforts findings, the court divided OCS's efforts into three time periods: (1) the time between Sarina's removal and Donny's incarceration (February to October 2023); (2) the time between Donny's initial incarceration and his entry into protective custody (October 2023 to April 2024); and (3) the time from his protective custody through trial (April 2024 to October 2024). The court determined that OCS's efforts during the second segment of time, from October 2023 to April 2024, were not reasonable, but that its efforts over the remaining periods rendered OCS's efforts reasonable overall.

Donny appeals, arguing that the superior court erred in ruling that OCS's efforts were reasonable.

## III. STANDARD OF REVIEW

" 'Whether OCS made reasonable efforts to reunify [a] family is a mixed question of law and fact.' For mixed questions, 'we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[7]

## IV. DISCUSSION

On appeal, Donny contends that OCS failed to make reasonable efforts to reunify his family and that the superior court's termination of his parental rights should therefore be reversed.

When a child is removed from the custody of her parents, OCS is required to "make timely, reasonable efforts to provide family support services to the child and [her] parents . . . that are designed to . . . enable the safe return of the child to the family

---

[7] *Kylie L. v. State, Dep't of Health & Social Servs., Off. of Child.'s Servs.*, 407 P.3d 442, 448 (Alaska 2017) (quoting *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1162 (Alaska 2016)).

home . . . ."[8] This includes the duty to "identify" services that will help a parent remedy the conduct that rendered the child in need of aid, and to "actively offer" and "refer" the parent to the services identified.[9] OCS's duty is discharged where the agency has set out "the types of services that a parent should avail himself or herself of in a manner that allows the parent to utilize the services."[10] In evaluating OCS's efforts toward a parent, we consider all interactions between the parent and OCS[11] and efforts geared toward facilitating or maintaining the relationship between the parent and the child.[12] However, such efforts need not be perfect.[13]

In challenging the superior court's determination that OCS made reasonable efforts to reunite the family in this case, Donny makes three arguments. First, Donny argues that OCS's initial delay in providing him with a case plan

---

**8** AS 47.10.086(a); *see also* CINA Rule 18(c)(2)(A) (requiring court to find that OCS complied with statutory reasonable efforts requirement before terminating rights).

**9** AS 47.10.086(1)-(2).

**10** *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003).

**11** *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 n. 21 (Alaska 2015).

**12** *See, e.g., Casey K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 311 P.3d 637, 646-47 (Alaska 2013) (outlining reasonable efforts including safety planning, case planning, referrals for services, and facilitation of visitation); *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 432-33 (Alaska 2012) (describing reasonable efforts as including family placement efforts and facilitation of treatment and visitation); *Sean B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 251 P.3d 330, 338-39 (Alaska 2011) (describing reasonable efforts including efforts to link parent to services and to encourage communication between parent and child).

**13** *Audrey H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 188 P.3d 668, 678 (Alaska 2008) ("The efforts that OCS makes must be reasonable but need not be perfect.").

demonstrates that its efforts were unreasonable. Second, he contends that OCS did not produce adequate evidence at the termination trial to support the court's finding that its efforts from February to October 2023 were reasonable. And third, Donny urges that OCS's provision of services at the end of the case was unreasonable and consisted of mere "attempt[s] to bolster its termination evidence" prior to trial. We address each point in turn, below.

A. **OCS's Initial Delay In Case Planning Does Not Overcome The Reasonable Nature Of OCS's Reunification Efforts Overall.**

First, Donny argues that OCS's delay in initial case planning with him demonstrates that its efforts were unreasonable. Donny points to OCS's policy manual, which provides that "[c]ase plans will be created and distributed to all appropriate parties within 60 days of assuming custody."[14] Donny points out that OCS did not meet with him to develop a case plan until five months after Sarina was removed, and contends that OCS's efforts during that initial time period, and overall, were unreasonable.

We acknowledge that OCS's initial case planning with Donny was delayed, and that such delay at or near the beginning of OCS's interaction with a family can be quite impactful. We also observe, however, that Donny's argument fails to capture or appreciate OCS's efforts during the initial months of the case.

During the initial months of the case OCS made several important efforts toward reunification of the family. OCS first attempted to place Sarina and her older sister with relatives or people Donny and Julia preferred to care for the children. Although these efforts were ultimately unsuccessful for reasons beyond OCS's control, they are nonetheless efforts OCS made to maintain or reunify the family. OCS also

---

[14] OFF. OF CHILD.'S SERVS., OCS POLICY MANUAL, 2.7.1 A Framework for Essentials in Case Planning (Oct. 1, 2016), https://manuals.dfcs.alaska.gov/OCS/CPSManual/index.html#t=Policies%2FChapter_2_Intake_and_Investigation%2F7_Case_Planning%2F2.7.1.htm.

immediately coordinated visitation opportunities between Donny and Sarina, as soon as the day following Sarina's removal. Upon learning of Donny's probation condition that prevented his unsupervised contact with young children, OCS communicated with Donny's probation officer to make sure Donny could still visit Sarina. These efforts evince OCS's concern for the parents' wishes and recognition of the importance of maintaining Sarina's bond with her parents.

Although OCS's policy manual lays out expectations for OCS caseworkers, the manual is not law. Donny is correct that OCS provided him a compliance-based case plan about four months after Sarina's removal, in June 2023, and did not meet with him to incorporate his input into a case plan until the next month, well beyond the 60 days provided for in OCS's manual. But when considered within the context of other efforts that OCS made toward Donny and the family during this time period, OCS's delay in initial case planning does not render its overall efforts throughout the case unreasonable.

### B. OCS Produced Adequate Evidence To Support The Court's Reasonable Efforts Finding.

Donny argues that OCS did not produce adequate evidence at the termination trial to support the court's finding that its efforts from February to October 2023 were reasonable. He notes that at the conclusion of the March 2024 permanency hearing, the superior court found that OCS had failed to put on evidence that it had made reasonable efforts through that time period.[15] But in relying upon the court's permanency order, Donny fails to account for the greater evidence that OCS presented during the termination trial — evidence that supported the court's determination that

---

[15] Specifically, Donny argues that OCS made no reasonable efforts from February 14, 2023 to July 12, 2023, and that it is difficult to efforts made in August, September, or October of 2023.

OCS had made a number of efforts during the early months of the case, from February to October 2023, and that its overall efforts to reunite the family were reasonable.

Donny argues that OCS did not produce any additional evidence at the termination trial that would have "given the court reason to amend its previous finding." But as OCS points out, the court heard only brief, limited testimony at the permanency hearing and did not at that point have before it several facts relating to OCS's efforts to engage Donny. The court made its earlier March 2024 ruling based upon the information that it had at the time of the permanency hearing. But the court's findings in the permanency order did not preclude the presentation of additional evidence on the point. Such additional evidence was presented at the termination trial, and the court's order terminating parental rights was informed by that further information.

Indeed, during the termination trial, the superior court heard a significant amount of evidence regarding OCS's early efforts toward the family that it had not heard during the earlier permanency hearing. During the termination trial, the court heard testimony regarding OCS's placement efforts, its communication with Donny's felony probation officer, and its facilitation of early and frequent visitation between Sarina and her parents. And although OCS's case planning efforts were initially delayed, the court heard evidence during the termination trial that once OCS began meeting with Donny to case plan, it made significant efforts to facilitate Donny's engagement with his case plan. This evidence was not before the court when it made its earlier permanency findings, and significantly impacted the court's reasonable efforts analysis. It was not error for the superior court to reach a different conclusion based on the additional evidence before it.

C. **OCS's Efforts Following Donny's Release From Prison Were Properly Credited.**

Finally, Donny argues that OCS's provision of services during the final months of the case was unreasonable because OCS was merely "attempting to bolster its termination evidence" by flooding Donny with reunification services just before and

- 11 -                                                    *2130*

during the termination trial. Donny urges that OCS's efforts after he was released from prison in August 2024 should be excluded from the reasonable efforts analysis. We are not persuaded.

Donny essentially argues that OCS's efforts during August, September, and October 2024 — the months during which the termination trial was taking place — should not be credited as genuine efforts to reunify him with Sarina. OCS responds that Donny does not cite any legal basis for the claim that efforts made after a termination trial is scheduled are evaluated differently from other efforts undertaken by OCS. OCS further points out that regardless, Donny's contention fails to account for his disengagement with OCS and with the numerous services offered to him leading up to and during the relevant time period.

We conclude that the superior court did not err in crediting OCS's efforts following Donny's release from prison in August 2024 and leading up to the date of the court's termination order. OCS is, with limited exceptions, required to make reasonable efforts toward reunification of a parent and child, even when seeking termination of parents' rights or pursuing a different permanency option for a child.[16] That is what OCS did here. Donny suggests that if OCS was making genuine efforts, it would have allowed more time for him to remedy his conduct and work through the elements of his case plan before pursuing termination of his rights. But this suggestion ignores state and federal laws setting timelines for OCS to petition for termination and for courts to schedule termination proceedings.[17] And equally important, Donny's contention that

---

[16] *See* AS 47.10.086 (imposing obligation on OCS to make reasonable efforts toward reunification without exception for when OCS is pursuing termination of parental rights or alternative permanency options).

[17] *See* AS 47.10.088(j) ("No later than six months after the date on which the petition to terminate parental rights is filed, the court before which the petition is pending shall hold a trial on the petition unless the court finds that good cause is shown

OCS and the court needed to delay termination proceedings for an unknown period in order for OCS efforts to be deemed meaningful fails to acknowledge OCS's and the court's obligations to consider Sarina's best interests.[18]

We observe that each of Donny's arguments on appeal is rooted in a refusal to acknowledge the extent of OCS's efforts and the evidence that his own choices severely limited his access to services. Donny fails to acknowledge OCS's efforts to search for relatives and to place Sarina with family, it's facilitation of visitation between Donny and Sarina, and its work updating Donny regarding his court case and regarding Sarina, tailoring case planning to Donny's needs and challenges, and providing a variety of timely referrals and recommendations for Donny's next steps toward reunification.

Moreover, Donny's own conduct and choices significantly limited OCS's ability to work with him and to connect him with services and resources. Donny's continued methamphetamine use, felony probation violations, and related repeated periods of incarceration, necessarily limited his access to services as well as his ability to visit Sarina. And after being arrested on his eleventh probation violation, Donny elected to reject probation and to serve the remaining suspended portion of his manslaughter sentence. This meant that Donny spent much of the next year in prison,

---

for a continuance."); *Vivian P. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 78 P.3d 703, 708 (Alaska 2003) (explaining that AS 47.10.086(c)(1) "incorporates into Alaska law the federal Adoption and Safe Families Act of 1997 (ASFA), which is designed to eliminate remedial requirements in extreme circumstances"); 42 U.S.C. § 675(5)(E) (requiring that state procedures assure commencement of termination of parental rights proceedings and concurrent adoption placement activity for children who have been in care for a specified amount of time, unless specific exceptions are satisfied).

[18] *See Rowan B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 361 P.3d 910, 914 (Alaska 2015) (stating that "the child's best interests are paramount during termination proceedings" and citing *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 260 (Alaska 1999)).

where his access to services and to Sarina was quite limited. And following his rejection of probation, Donny made the decision to enter protective custody for numerous months, a decision that segregated him from the general prison population and further limited his access to services.[19]

Even after release from custody, Donny failed to follow through with important services and visitation with Sarina, in spite of OCS's efforts to engage him and in spite of the impending and then ongoing termination proceedings. Although he initially engaged in behavioral health treatment with OCS's assistance, he soon began missing those treatment appointments. He downplayed the importance of that treatment, explaining that, as he saw it, "you show up as you please." Donny also missed UAs because, by his own admission, he chose not to go or just forgot. Finally, shortly after his release from custody, Donny began missing visits with Sarina. His reasons for missing visits became "more vague" over time, and eventually he simply stopped calling OCS to cancel.

Donny likens his case to *Duke S.*,[20] a case in which we reversed a superior court's termination order after concluding that the superior court had erred in deciding that OCS made reasonable efforts. He argues that OCS's efforts toward him were minimal and that he, like the father in *Duke S.*, only made efforts "on his own initiative"[21] while incarcerated. He contends that this, along with OCS's delayed initial case planning with him, requires reversal of the superior court's reasonable efforts analysis here.

---

**19**    We note that although the decision to enter into protective custody may have been understandable under the circumstances, this decision nonetheless impacted Donny's ability to engage with recommended services and to be reunited with Sarina.

**20**    *Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127 (Alaska 2018).

**21**    *Id.* at 1137.

We are not convinced by Donny's comparison of his case with *Duke S.* OCS made significantly greater efforts toward Donny here than were made in that case.[22]  Instead, we consider Donny's case more analogous to *Barbara P.*[23]  Here, as in *Barbara P.*, OCS developed and updated a tailored case plan, made referrals for multiple meaningful assessments and services, and arranged supervised visitation.[24]  And here, as in *Barbara P.*, the father "made little progress in completing his case plan requirements."[25]  Indeed, OCS's efforts here appear to be more extensive than those at issue in *Barbara P.*[26]

In light of the record in this case, we hold that the superior court did not err in determining that OCS made reasonable efforts overall.

## V.   CONCLUSION

We AFFIRM the superior court's order terminating Donny's parental rights.

---

**22**     *See id.* at 1130-31, 1136.  OCS never made a case plan in *Duke S.* and here the caseworker discussed the case plan in May 2023 and sent an initial case plan a month later.  *See id.* at 1136.

**23**     *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1262-63 (Alaska 2010).

**24**     *See id.* at 1261-62.

**25**     *See id.* at 1262.

**26**     Donny argues that one of the failures in OCS's efforts in his case was its delay in facilitating visitation while Donny was incarcerated.  Although we agree that OCS was delayed in setting up visitation while Donny was incarcerated, we observe that OCS did ultimately provide three videoconference visits with Sarina during this time period, as well as regular updates about and pictures of Sarina.  Although OCS's efforts here were not perfect, in that it has acknowledged it should have initiated visitation between Donny and Sarina sooner during his period of incarceration, this fault does not overcome the superior court's analysis of OCS's overall efforts and determination that those efforts were reasonable.