NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NORA M., | ) | |
| | ) | Supreme Court No. S-15183 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 3PA-11-00019/00020 CN |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1481 – March 5, 2014 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Michael Rose, Frontier Law Group, LLC, Anchorage, for Appellant. Andy Harrington, Assistant Attorney General, Fairbanks, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

In January 2011 the Alaska Office of Children's Services (OCS) removed Nadia and Tia from their grandmother's home because of concerns that an adult relative who was living in the home posed a risk of sexual abuse.[1] The girls could not be

---

\*      Entered under Appellate Rule 214.

[1]      Pseudonyms are used throughout to protect the privacy of the parties.

returned to their mother's (Nora's) custody because Nora was homeless. The girls were placed into foster care. In February 2011 OCS developed a case plan for Nora that called for her to obtain safe housing, participate in a mental health assessment and follow recommendations, and participate in family counseling with her children. In April 2011 the case plan was amended to specify that the mental health assessment was to be conducted by Long Solutions. The plan also stated that OCS would assist Nora in identifying a counselor to conduct family counseling. In April 2011 OCS wrote a letter to Alaska Housing to assist Nora in obtaining safe housing.

Shortly after the April 2011 case plan was prepared, the trial court held an adjudication hearing, during which the court found that OCS had "made reasonable efforts to facilitate reunification of the family up to this point"; Nora's attorney stated that aside from a scheduling issue that had been resolved she had no concerns about reasonable efforts.

On June 1, 2011, Nora participated in a mental health assessment with Dr. Grace M. Long. Dr. Long's report, which was apparently received by Nora's attorney on August 1, 2011, recommended that Nora participate in (1) individual therapy to address her past abuse issues, her relationship with her father, and her interactions with potential partners; (2) support groups or classes targeting decision making, priority setting, parenting, childhood development, and judgment issues; and (3) domestic violence education classes.

In July 2011 the children's guardian ad litem (GAL) filed a predisposition report with the trial court. The report indicated that OCS was allowing Nora to have unrestricted unsupervised visits with the children, but Nora "has had extremely rare and inconsistent contact with the children. She does not call in between visits and has at times come to the home to see the kids for ten minutes and leaves." The report went on to note that Nora's progress on her case plan had been "dismal," and it urged OCS to

consider referring Nora for a psychological evaluation.

On July 18, 2011, the trial court held a disposition hearing, at which Nora was not present. Nora's attorney stated that while he had been in contact with her in the past, he presently was unable to contact her. The trial court found that OCS had made reasonable efforts to create Nora's case plan, but that Nora had not meaningfully engaged in the plan, had not made substantial progress toward completing its goals, and had not "maintained up-to-date contact information with the department so that the department could facilitate getting those referrals accomplished, getting reports out, getting [Nora] into treatment."

By October Nora was again in contact with OCS. In October and again in December Nora and her social worker discussed the recommendations in Nora's mental health assessment. During both meetings the worker advised Nora to follow through with the recommendations.

Also in December 2011, Nora submitted a hair follicle that tested positive for cocaine. OCS referred her for a substance abuse assessment at Salvation Army Clitheroe Center that she completed on January 5, 2012. The assessment recommended that Nora complete an outpatient treatment program consisting of group and individual sessions and participate in additional random drug screening. Clitheroe placed Nora on a wait list for admission to its treatment program. Although Nora reached the top of the wait list she chose not to participate in that program. She instead obtained a second substance abuse assessment from Jett Morgan, where she entered treatment. OCS provided collateral information to the Jett Morgan assessor. Nora began but did not complete treatment at Jett Morgan; she was dismissed for failing to attend.

On January 3, 2012, the trial court held a permanency hearing at which it found that OCS had made reasonable efforts to provide remedial services and rehabilitative programs to Nora including developing a case plan for Nora; providing her

with a team decision making meeting; and offering her opportunities to participate in substance abuse assessment/treatment, mental health assessment/treatment, parenting classes, random drug testing, domestic violence counseling or classes, and family contact. The court found that while Nora had "begun work on at least the mental health portion" of her case plan, she had "not made substantial efforts towards remedying the conduct or conditions that cause these children to be children in need of aid."

In the following months Nora put some effort into participating in services. She participated in family counseling sessions with the girls. She complied somewhat with her urinalysis regimen, but had numerous no-shows and positive tests for marijuana and one positive test for cocaine. She took parenting classes on-line from an unapproved provider. She attended some of the classes she had registered for at AWAIC. These classes were free, but Nora did not participate fully because the classes were not structured in a format that would result in Nora receiving a certificate of completion, and there was some question as to whether OCS would credit her participation. Ultimately, OCS gave Nora credit for any sessions she participated in.

In June 2012 OCS filed a petition to terminate Nora's parental rights. In July OCS amended Nora's case plan for the final time; the goals and activities remained similar to those of the earlier plans with the addition of a substance abuse component. OCS referred Nora for another psychological evaluation with Dr. Long, which was conducted in July. The resulting evaluation was incomplete, because Nora arrived two hours late to her appointment and failed to appear at all for a scheduled make-up session. In her evaluation Dr. Long "strongly" recommended that Nora attend parenting and domestic violence classes in person (as opposed to on-line). She continued her previous recommendation for individual psychotherapy but also stated that Nora "may need longer-term therapy with a seasoned clinician to overcome her initial resistance and objections." And she "strongly" recommended that Nora continue with substance abuse

treatment and associated aftercare.

In the summer of 2012 Nora ceased participating with OCS's reunification efforts. In July she left Anchorage and went to Fairbanks, where she stayed for two months. She was dismissed from her substance abuse treatment program at Jett Morgan, and she stopped participating in the family counseling OCS had arranged for her. In August she told her social worker that she was no longer going to engage in her case plan, participate in substance abuse treatment, or work with OCS. On her return to Anchorage she was arrested for drug and weapons violations. She admitted to the arresting officer that she was a frequent user of crack cocaine. While in jail she threatened to kidnap the girls from their foster home. Nora was still in pretrial detention in November and December 2012, when the termination trial was held. While incarcerated she again began participating in services but, according to both Nora and the social worker, she had not completed any aspect of her case plan and her issues involving domestic violence and substance abuse remained unremedied.

The trial to terminate Nora's parental rights was held on November 8 and December 5, 2012. At the close of the trial the trial court terminated Nora's parental rights on the record; it issued its written decision on May 20, 2013. The trial court found that the girls were children in need of aid under AS 47.10.011(8), based on Nora's history of engaging in relationships that involved domestic violence and her threat to kidnap the girls, and AS 47.10.011(10), based on Nora's abuse of substances since the girls were taken into OCS's custody, her arrest for possession of a large amount of cocaine in September 2012 while in the company of a 16-year-old boy, and her failure to be candid about her drug use during two substance abuse assessments and with Dr. Long. The trial court found that Nora had not remedied the conduct or conditions that endangered the children, that OCS made reasonable but unsuccessful efforts to reunify the family, and that termination of Nora's parental rights was in the children's

best interests.

With regard to reasonable efforts the trial court specified that OCS had provided Nora with

> referrals and funding for substance abuse assessments, referral and funding for a mental health assessment, . . . therapeutic family visits, family contact planning, family contact, referral to Alaska Family Services for individual treatment, referrals and funding for urinalysis and hair follicle drug testing, . . . referral for a domestic violence program through AWAIC, and case planning services.

Nora appeals, challenging only the finding that OCS provided her with reasonable efforts to reunify the family.

Whether OCS made reasonable efforts to reunify a family is a mixed question of law and fact.[2] We review legal questions de novo.[3] We will affirm factual findings that are not clearly erroneous.[4] A finding is clearly erroneous if, after reviewing the entire record, we feel definitely and firmly that the finding is mistaken.[5]

1.      Nora first argues that OCS delayed unreasonably in referring her to Dr. Long for her mental health evaluation and in providing her with Dr. Long's report. She did not raise this challenge in the trial court, and the trial court did not address the timeliness of OCS's actions in its decision. Thus, this issue was not preserved for appeal

---

[2]      *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 428 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[3]      *Id*.

[4]      *Id*. at 427 (citing *Christina J.*, 254 P.3d at 1103).

[5]      *Id*. at 427-28 (citing *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

and we do not decide it.[6]

2.    Nora next argues that OCS erred by not acting promptly to implement the GAL's suggestion that Nora receive a psychological evaluation in addition to her mental health assessment. This argument is unavailing because an earlier psychological evaluation likely would not have changed the outcome of the case. The recommendations Dr. Long made in the psychological evaluation did not differ significantly from the recommendations contained in the earlier mental health assessment. Further, as Nora herself acknowledged, she did not complete any aspect of her case plan, including following the recommendations from her initial mental health assessment. We have no basis to believe Nora would have acted any differently had OCS scheduled the psychological evaluation earlier.

3.    Nora argues that OCS never referred her for the individual therapy that Dr. Long recommended she participate in. Nora suggests that OCS's duty to refer a client to services requires that OCS make an appointment with a provider. OCS and the trial court understood that OCS's duty to refer a client to services is fulfilled by providing the client with contact information for an appropriate provider. Alaska Statute 47.10.086(a) requires OCS to identify family support services that will assist the parent in remedying conduct or conditions that endanger a child and to "actively offer the parent or guardian, and refer the parent or guardian to, the services." We have held that "the requirement that the state offer reunification services is fulfilled by setting out the types of services that a parent should avail himself or herself of in a

---

[6]    *See Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 935 (Alaska 2012) (citing *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 655 n.25 (Alaska 2003)).

manner that allows the parent to utilize the services."[7] Here, Nora's social worker, Steven Parrish, testified that he suggested Alaska Family Services to Nora as a provider she could use for therapy services but that Nora generally located her own providers and, further, that she refused at the time to participate in counseling.[8] He testified that it is not his practice to make an appointment for a client with a service provider if the client refuses to participate in the service. The trial court found that OCS referred Nora to numerous service providers, including "Alaska Family Services for individual treatment," and in her brief on appeal Nora concedes that Parrish "suggested Alaska Family Services, but did not make an appointment for" Nora. Nora's argument is further undermined by the fact that she failed to meaningfully participate with OCS's efforts to engage her in services.

4.      OCS satisfied its duty to offer and refer Nora to services by identifying a therapy provider to Nora in a manner that allowed her to utilize the service had she chosen to do so. While there may have been some delay by OCS in providing services to Nora, considering the totality of circumstances over the entire case the trial court correctly concluded that OCS's efforts to reunify Nora with her children were reasonable.[9]

---

[7]      *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003).

[8]      Nora agreed that "for quite a long period of time" she refused to participate in the therapy Dr. Long had recommended. Nora testified that OCS did not help her in locating any service providers other than for urinalysis testing. But Parrish testified that OCS referred Nora to domestic violence classes, a substance abuse assessment, and a mental health assessment, and that OCS attempted to set Nora up with counseling services.

[9]      *See Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003) ("[T]he reasonableness of the division's efforts . . .

5. Finally, Nora argues that OCS's efforts were not reasonable because OCS "simply ignore[d] the potential physical etiology of [Nora's] mental health issues" and that "potential physical damage to [her] brain as a result of domestic violence, and any diagnosis of bipolar disorder, should have played a role in her case planning." OCS responds that its duty was to provide services designed to assist Nora in remedying conduct or conditions that endangered her children, that the relevant conduct or conditions involved Nora's problems with substance abuse and domestic violence, and that the professionals enlisted to evaluate Nora in these areas did not identify Nora's physical condition as an important factor in helping her alleviate the endangering conduct or conditions. OCS also points out that while Nora told people she was bipolar, she admitted that she had not been diagnosed with that disorder, and that Dr. Long, who was qualified to diagnose bipolar disorder, did not diagnose Nora with it. OCS's argument on these points is persuasive.

For the foregoing reasons the trial court's conclusion that OCS provided Nora with reasonable efforts and its order terminating Nora's parental rights to Nadia and Tia are AFFIRMED.

---

must be viewed in light of the entire history of services.").