NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d). Accordingly, this memorandum decision may not be cited for any proposition of law or as an example of the proper resolution of any issue.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SIMONE B., | ) | |
| | ) | Supreme Court No. S-15858 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-13-00099 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1564 – December 30, 2015 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Hanley Robinson, Contract Attorney for the Public Defender Agency, Anchorage, for Appellant. David T. Jones, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

1. Simone B.[1] appeals the superior court's termination of her parental

---

\*      Entered under Alaska Appellate Rule 214.

1      We use initials and pseudonyms to protect the privacy of the parties.

rights to her son Elliot J.[2] We have carefully reviewed the record and considered Simone's arguments on appeal. After applying the applicable standards of review[3] we conclude that the evidence supports the superior court's findings and that the superior court correctly applied relevant law.[4]

The superior court found that Elliot was a child in need of aid as defined by AS 47.10.011(1) (abandonment),[5] (6) (risk of substantial physical harm),[6]

---

[2]  The father's rights were also terminated, but he did not appeal.

[3]  In a Child in Need of Aid termination proceeding, we review a superior court's factual findings for clear error. *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427 (Alaska 2012). Factual "[f]indings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.' " *Id.* at 427-28 (quoting *Barbara P. v. State, Dep't of Health &Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)). "Whether a child is in need of aid and whether the parent failed to remedy the 'conduct or the conditions that placed the child at substantial risk' of harm are factual findings reviewed for clear error." *Id.* at 428 (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)). "Best interest determinations are also factual findings subject to clear error review." *Id.* "Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact," and we review questions of law de novo. *Id.*

[4]  AS 47.10.088(a)(1) is the controlling law on the involuntary termination of parental rights.

[5]  The trial court may find a child to be in need of aid if "a parent or guardian has abandoned the child as described in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter." AS 47.10.011(1).

[6]  The trial court may find a child to be in need of aid if "the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, guardian, or custodian or by the failure of the parent, guardian, or custodian to

(continued...)

(9) (neglect),[7] and (10) (substance abuse).[8]  Simone does not challenge the court's finding that Elliot is a child in need of aid under AS 47.10.011(10), which addresses substance abuse by the parent.  But she does challenge the court's three other child in need of aid findings, arguing that they were impermissibly based on the same conduct that demonstrated that Elliot was a child in need of aid due to Simone's substance abuse.  Before terminating parental rights the trial court must find by clear and convincing evidence that the child is in need of aid.[9]

We have previously held that if the record supports at least one ground for finding a child in need of aid, "[w]e need not address all statutory bases found by the superior court to affirm the superior court's finding that [a child] was . . . in need of aid."[10]  Furthermore, we have made clear that a court may rely on the same evidence to

---

**6**        (...continued)
supervise the child adequately."  AS 47.10.011(6).

**7**        The trial court may find a child to be in need of aid if "conduct by or conditions created by the parent, guardian, or custodian have subjected the child or another child in the same household to neglect."  AS 47.10.011(9).

**8**        The trial court may find a child to be in need of aid if "the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and [this use] has resulted in a substantial risk of harm to the child."  AS 47.10.011(10).

**9**        "[T]he rights and responsibilities of the parent regarding the child may be terminated for purposes of freeing a child for adoption or other permanent placement if the court finds by clear and convincing evidence that (1) the child has been subjected to conduct or conditions described in AS 47.10.011."  AS 47.10.088(a).

**10**        *Philip J. v. State, Dep't. of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 532 (Alaska 2013); *see also Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 430-31 (concluding that after affirming the superior court's finding of abandonment, "we do not reach the State's
(continued...)

make child-in-need-of-aid findings on more than one statutory ground.[11] Therefore, because Simone does not challenge the superior court's finding that Elliot is a child in need of aid under AS 47.10.011(10), we need not address her challenge to the three additional statutory findings.

2. Before terminating parental rights the trial court must find by clear and convincing evidence that the parent "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[12] In making this determination, the court may consider any fact relevant to the child's best interests, including:

(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

(2) the amount of effort by the parent to remedy the conduct or the conditions in the home;

(3) the harm caused to the child;

(4) the likelihood that the harmful conduct will continue; and

---

**10** (...continued)
alternative argument for termination based on neglect"); *Rick P. v. State, Office of Children's Servs.*, 109 P.3d 950, 956 (Alaska 2005) (holding that "our determination that the mental injury finding was not erroneous makes it unnecessary to consider [the appellant's] challenges to [the superior court's] other [CINA] findings).

**11** *See, e.g.*, *Stanley B. v. State, Div. of Family & Youth Servs.*, 93 P.3d 403, 407 (Alaska 2004) (affirming findings that children were in need of aid based on both their father's incarceration and his abuse of intoxicants, where his abuse of intoxicants was "at least partially responsible" for his incarceration and his prolonged absences while incarcerated).

**12** AS 47.10.088(a)(2)(B).

(5) the history of conduct by or conditions created by the parent.[13]

Here the superior court found by clear and convincing evidence that neither parent had remedied the conduct that placed Elliot at a substantial risk of harm, concluding that "[t]he parents have made little progress towards remedying the conduct that led to removal." In addition the court found that Simone was not attending a substance abuse program, had not demonstrated any sustained period of sobriety, and other than her consistent visitation with Elliot, "ha[d] not meaningfully participated in a caseplan."[14]

Simone argues that it was not reasonable for the Office of Children's Services (OCS) to petition for termination of her parental rights eleven months after it assumed emergency custody of Elliot. She argues that because her history of substance abuse is recent, because she was previously protective of Elliot, and because Elliot was placed with caregivers who are relatives, she did not have a reasonable time to remedy her substance abuse. OCS responds that Simone's inability to follow through with substance abuse treatment and maintain sobriety indicates that she is unlikely to do so in the near future and that Elliot's young age makes it particularly important to place him in a permanent home as soon as possible.

At the time of the termination trial, Elliot was five years old. The Alaska Legislature has made legislative findings that we have deferred to in the termination of

---

[13]    AS 47.10.088(b).

[14]    In October 2013, the Office of Children's Services wrote a caseplan for Simone that required her to complete a substance abuse assessment, psychological evaluation, and parenting classes; participate in random and weekly urinalyses; and demonstrate adequate housing and a stable living environment.

parental rights under similar circumstances:[15]  among these legislative findings is the policy that "it is important to provide for an expedited placement procedure to ensure that all children, especially those under the age of six years, who have been removed from their homes are placed in permanent homes expeditiously."[16] We conclude that the superior court did not abuse its discretion in terminating Simone's parental rights. We also conclude that the superior court did not clearly err in finding that Simone did not timely remedy the conduct that put Elliot at risk.

---

[15]    AS 47.05.065 provides:

The legislature finds that . . .

(5) numerous studies establish that

(A) children undergo a critical attachment process before the time they reach six years of age;

(B) a child who has not attached with an adult caregiver during this critical stage will suffer significant emotional damage that frequently leads to chronic psychological problems and antisocial behavior when the child reaches adolescence and adulthood; and

(C) it is important to provide for an expedited placement procedure to ensure that all children, especially those under the age of six years, who have been removed from their homes are placed in permanent homes expeditiously.

*See also Christina J. v. State, Dep't. of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1106-08, 1112 (Alaska 2011) (affirming termination of parental rights and trial court's finding that a very young child would be at substantial risk of emotional or physical damage if returned to mother's custody and that mother had failed to timely remedy her conduct); *Barbara P. v. State, Dep't. of Health & Social Servs., Office of Children's Servs.*, 234 P.3d 1245, 1260-61, 1263-64 (Alaska 2010) (affirming termination of parental rights as in the best interests of the children where parents failed to remedy their conduct and young children had bonded with their foster parents).

[16]    AS 47.05.065(5)(C).

3.    Before terminating parental rights the trial court must find by clear and convincing evidence[17] that OCS made "timely, reasonable efforts to provide family support services . . . that are designed to prevent out-of-home placement of the child or to enable the safe return of the child to the family home."[18]  OCS's statutory duties include: (1) identifying family support services that will assist in remedying the parent's conduct; (2) actively offering and referring the parent to those services; and (3) documenting its actions.[19]  OCS fulfills this requirement by "setting out the types of services that a parent should avail himself or herself of in a manner that allows the parent to utilize the services."[20]  Reunification efforts do not need to be perfect, but they must be reasonable under the circumstances depending on the parent's substance abuse history, willingness to participate in treatment,[21] the history of services provided by OCS,[22] and the parent's level of cooperation.[23]  The reasonableness of OCS's efforts may

_____

[17]    AS 47.10.088(a).

[18]    AS 47.10.086(a).

[19]    *Id.*

[20]    *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 679 (Alaska 2008) (quoting *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003)) (internal quotation marks omitted).

[21]    *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013).

[22]    *Audrey H.*, 188 P.3d at 679 n.35 ("[T]he determination of whether OCS made reasonable efforts may involve consideration of all interactions between the parent and OCS."); *Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003) ("[T]he reasonableness of the division's efforts . . . must be viewed in light of the entire history of services . . . .").

[23]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

also depend on the parent's expressed interest in parenting, with OCS's responsibility lessening as the parent's interest wanes.[24] "In reviewing whether OCS made reasonable efforts, a court considers the state's reunification efforts in their entirety. The court must first identify the problem that caused the children to be in need of aid and then determine whether OCS's efforts were reasonable in light of the surrounding circumstances."[25]

Simone contends that the record does not provide clear and convincing evidence that OCS made reasonable efforts to assist her in overcoming her addiction or actively refer her to services to help reunify her with Elliot. OCS responds that the efforts were reasonable, albeit unsuccessful, and that perfect efforts are not required.

The superior court found that OCS made timely and reasonable efforts to promote Simone's reunification with Elliot. In addition to providing a written caseplan, OCS provided remedial services and rehabilitative programs to prevent the breakup of the family. These included (1) referring Simone for psychological evaluation and providing transportation for these evaluations; (2) arranging for urinalyses throughout the case; (3) providing additional information to treatment providers Simone had

---

[23]    (...continued)
*Servs.*, 310 P.3d 943, 953 (Alaska 2013) ("In evaluating whether OCS has made reasonable efforts, the court should 'look at . . . the parent's level of cooperation with OCS's efforts.' " (alteration in original) (quoting *Tara U. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 239 P.3d 701, 705 (Alaska 2010)).

[24]    *Audrey H.*, 188 P.3d at 679.

[25]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1262-63 (Alaska 2010) (internal citations omitted) (holding trial court did not clearly err in finding OCS's reunification efforts were reasonable, despite failure to provide visitation in prison, in light of OCS's reunification efforts in their entirety); *Audrey H.*, 188 P.3d at 679-81 (holding that, although OCS's efforts were limited at times, this did not render its efforts unreasonable when considered in context of history with parent).

identified; and (4) meeting routinely with Elliot's grandparents to ensure that his needs were met.

The record supports the superior court's findings. We conclude that the superior court did not err in finding that OCS made timely, reasonable efforts in an attempt to reunify the family.

4. Before terminating parental rights the superior court must find, by a preponderance of the evidence, that termination is in the child's best interests.[26] The court may consider the statutory facts listed in AS 47.10.088(b)[27] as well as any other facts relating to the child's best interests.[28] "The superior court is not required to consider or give particular weight to any specific factor, including a parent's desire to parent or her love for the child," and the court may consider factors such as the child's bond with foster parents, the child's need for permanency, and the parent's lack of

---

[26] CINA Rule 18(c)(3); AS 47.10.088(c).

[27] The statute provides:

> In making a determination under (a)(2) of this section, the court may consider any fact relating to the best interests of the child, including
>
> (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;
>
> (2) the amount of effort by the parent to remedy the conduct or the conditions in the home;
>
> (3) the harm caused to the child;
>
> (4) the likelihood that the harmful conduct will continue; and
>
> (5) the history of conduct by or conditions created by the parent.

[28] *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).

progress.[29] "The court also may consider the presence or lack of favorable present placements."[30]

Simone argues that the superior court should have postponed trial to allow her additional time to engage in treatment. She submits that she maintained consistent contact with Elliot throughout the case. She also argues that her history of substance abuse was short, she demonstrated effort to remedy her conduct by attempting substance abuse treatment, there was a lack of evidence of harm to Elliot, and terminating her parental rights was not in his best interests. OCS responds that the child's interests are paramount and that Elliot's placement with his grandparents has proved to be a positive, stable, loving environment while Simone has failed to make progress or demonstrate that she will maintain sobriety at any point in the near future.

The superior court found that Simone loves Elliot and that they were bonded, but her unemployment, unwillingness to attend any treatment programs, and inability to provide a time frame for when she would complete treatment undercut her arguments. Additionally, the court concluded that Elliot resided in a loving, supportive home with his grandparents, who independently provide for his every need. He appeared happy and healthy, and the court further concluded that as a young child, Elliot "needs the stability of a permanent home and a safe and nurturing environment in order to have a chance to succeed in life." We conclude that the superior court did not err in making these findings.

---

[29] *Id*.; *see also Barbara P.*, 234 P.3d at 1263-64 (upholding finding that termination was in the children's best interests based on their need for permanency, stability in the foster home, and fact that neither biological parent would be ready to care for the children on a full-time basis within a reasonable period of time).

[30] *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 647 (Alaska 2013).

5.      We AFFIRM the superior court's termination of Simone's parental rights.