NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALISON L., | ) |
| | ) Supreme Court No. S-17795 |
| Appellant, | ) |
| | ) Superior Court Nos. 3AN-18-00240/ |
| v. | ) 00241 CN |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) No. 1813 – January 27, 2021 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Laura E. Wolff, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree and Maassen, Justices. [Carney and Borghesan, Justices, not participating.]

I.     **INTRODUCTION**

A mother appeals the termination of her parental rights to twin daughters. Because the evidence supports the superior court's findings and the court correctly applied relevant law, we affirm the parental rights termination.

---

\*     Entered under Alaska Appellate Rule 214.

## II.     BACKGROUND

Alison L.[1] is the biological mother of six children, including twin daughters born in 2013 who are the subjects of this case. Office of Children's Services (OCS) became involved with Alison's older children due in part to her substance abuse, and her parental rights to her four older children were either terminated or relinquished. The twins' father has never had any contact with them and is not a party to this case.

Given the nature of this appeal, we do not need to detail the history of OCS's involvement with the family. But in May 2018 OCS petitioned for temporary custody of the twins, and in February 2019 OCS petitioned for termination of Alison's parental rights. A termination trial took place over five days, finishing in January 2020. The superior court concluded that OCS had met its burden of persuasion for terminating parental rights.[2]

---

[1]      We use a pseudonym to protect Alison's privacy.

[2]      Under relevant Alaska Child in Need of Aid (CINA) statutes and rules, parental rights may be terminated at trial only if OCS shows, under Rule 18(c):

> (1) by clear and convincing evidence that
>
>> (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
>>
>>> (i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
>>>
>>> (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; or

(continued...)

## III. DISCUSSION

### A. Findings For Terminating Parental Rights

The superior court found by clear and convincing evidence that the twins were in need of aid under AS 47.10.011(1) (abandonment) and (10) (parental substance abuse). Although Alison briefly addresses her substance abuse in connection with her argument that terminating her parental rights is not in the twins' best interests, she does not challenge the court's child in need of aid findings. Nor does Alison challenge the court's finding by clear and convincing evidence that she failed within a reasonable time to remedy the conditions causing her children to be in need of aid.

The superior court further found by clear and convincing evidence that OCS made reasonable efforts to reunify the family[3] and by a preponderance of the evidence that terminating parental rights is in the children's best interests.[4] We address Alison's challenges to these findings below.[5]

---

[2] (...continued)

  . . . .

 (2) by clear and convincing evidence that

  (A) the Department has complied with the provisions of AS 47.10.086 concerning reasonable efforts . . .

 (3) by a preponderance of the evidence that termination of parental rights is in the best interests of the child.

CINA Rule 18; *see also* AS 47.10.080.

[3] AS 47.10.086.

[4] AS 47.10.086(f); CINA Rule 18(c)(3).

[5] " 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.' For mixed questions, 'we review factual questions under the
(continued...)

**B.     Reasonable Efforts To Reunify Alison's Family**

Alison contends that the superior court erred by finding OCS made reasonable efforts to reunify her family.  At the termination trial Alison contended that she did not know what steps she was supposed to take and that she was "sitting around waiting for [her OCS caseworker] to do something."  She testified that she "had no idea . . . what the game plan was," that "there was no plan at all, for all . . . [she] knew," and that "there was no case plan."  Alison said: "[M]y actions were that there was no actions. I didn't make any actions."

But the record reflects OCS's multiple attempts to notify Alison of her first case plan and schedule visits for her with the twins.  OCS documented attempts to contact Alison by phone, text, mail, at her boyfriend's home, and through her mother. OCS later crafted a second case plan, discussed it with Alison, obtained her signature, and gave her a copy.

The superior court found "OCS's position to be far more credible and supported by all the evidence."**[6]**  "[T]he requirement that [OCS] offer reunification services is fulfilled by setting out the types of services that a parent should avail himself

---

**5**     (...continued)
clearly erroneous standard and legal questions using our independent judgment.' " *Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017) (quoting *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016)).  Best interests findings are factual findings reviewed for clear error.  *Joy B.*, 382 P.3d at 1162.

**6**     *See Jude M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 394 P.3d 543, 550 (Alaska 2017) (noting that "we will not reweigh evidence when the record provides clear support for a trial court's ruling" and that conflicting evidence generally is insufficient cause to overturn court's factual findings).

or herself of in a manner that allows the parent to utilize the services."[7] Additionally, the court "may consider 'a parent's demonstrated lack of willingness to participate in treatment.' "[8] The burden of effort does not rest solely on OCS; the parent also must play an active role.[9] The court concluded that Alison abandoned the twins by failing to keep in touch, disappearing, and visiting only erratically; in response to her complaint that the twins' fifth foster placement was too distant to allow visitation, the court pointed out that by that time, "[Alison] had been mostly missing and incommunicado for about one year." Alison does not challenge the CINA abandonment finding, the substance of which diminished OCS's ability to engage her.[10] Alison was aware of her case plans, but she took no steps to meet the goals they established. The court's finding that OCS made reasonable efforts to reunite the family is supported by evidence in the record and is not clearly erroneous.

## C. The Twins' Best Interests

Alison contends that terminating her parental rights was not in the twins' best interests. She points to the "turmoil" in their lives from several different foster care

---

[7]     *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 679 (Alaska 2008) (quoting *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003)).

[8]      *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.* 244 P.3d 1099, 1114 (Alaska 2010) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268 (Alaska 2008)).

[9]     *See Joy B.*, 382 P.3d at 1166 (finding OCS's efforts reasonable in light of mother's refusal to cooperate); *see also Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 433 (Alaska 2015) (concluding that cause of failure to reunify family was mother's disappearance and lack of interest, not OCS's failure to make adequate efforts).

[10]     *See Audrey H.*, 188 P.3d at 679.

placements while in OCS's custody. She contends that at the time of trial she was seeking a treatment recommendation to address her substance abuse issues and that "substance abuse treatment . . . would remedy the conduct or conditions that placed the children in need of aid."

But Alison testified that she has struggled with drug addiction most of her adult life; she has a more than 15-year history of opioid addiction, and she admits she is an addict. OCS was unable to contact Alison during much of the proceedings, and she had made no progress on her case plan. The court agreed with OCS that a significant change in Alison's behavior was unlikely.[11]

Factors such as the parent's determination to change and capability to do so are relevant to the children's best interests.[12] The need for permanency and stability is crucial for young children,[13] and "a child's need for permanence and stability should

---

[11] *See, e.g., Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1261 (Alaska 2010) (upholding court's finding that, despite completing case plan and substance abuse treatment, mother with extensive relapse history had not shown she had addressed her substance abuse); *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 901-03 (Alaska 2003) (upholding court's finding that, despite one year of sobriety, mother with extensive relapse history had not shown she had addressed her substance abuse).

[12] *See Karrie B. ex rel. Reep v. Catherine J.*, 181 P.3d 177, 182 (Alaska 2008) (noting mother's substance abuse pattern "of apparent improvement and then devastating relapse").

[13] *Barbara P.*, 234 P.3d at 1263-64; *see also Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850-51 (Alaska 2009) (approving superior court's consideration of "the children's need for stability and permanency" in evaluating the children's best interests in termination proceeding); *Debbie G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 132 P.3d 1168, 1171 n.5 (Alaska 2006) ("We have often noted that young children require 'permanency and stability' or risk long-term harm.").

not be put on hold indefinitely while the child's parents seek to rectify the circumstances that cause their child[] to be in need of aid."[14] Given Alison's history of substance abuse, OCS's involvement with her older children, and her inability to provide a stable home within a reasonable time, the record supports the superior court's finding that terminating her parental rights was in the children's best interests.

## IV.  CONCLUSION

The superior court's decision is AFFIRMED.

---

[14]      *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 954 (Alaska 2013) (quoting *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d. 597, 603 (Alaska 2012)).