NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ARIEL D., | ) | |
| | ) | Supreme Court No.: S-18286 |
| Appellant, | ) | |
| | ) | Superior Court No.: 3KN-20-00064 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1944 – February 1, 2023 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Amanda Harber, 49th State Law, LLC, Soldotna, for Appellant. Mary Ann Lundquist, Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

A mother asserts that the superior court made numerous errors when it adjudicated her son in need of aid and granted custody to the Office of Children's Services (OCS). She argues that it erred by finding that her son was in need of aid; that

---

\*        Entered under Alaska Appellate Rule 214.

OCS made reasonable efforts to reunite her with her son; that it was in her son's best interests to be placed in OCS custody; and that extending OCS custody for 30 days after the disposition hearing was also in her son's best interests. We affirm the superior court's orders.[1]

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In September 2020 Ariel[2] was riding on the back of a male friend's four-wheeler near her home with her two-year-old daughter Alanna. Ariel's son Holden was at school. As the driver turned from the driveway onto the road, he noticed Ariel had passed out; he took her to the hospital. When Ariel regained consciousness at the hospital, her blood alcohol level was 465 mg/dL. The doctor warned Ariel that if she continued to drink, she was "going to kill herself." Ariel was admitted to the hospital. Ariel's mother took both children to Ariel's older brother, who lived in another community, so that he could care for them.

OCS received a report that Ariel had been taken to the emergency room, unconscious from intoxication. A caseworker met with Ariel at her home a day later.

---

[1]    About a month after the superior court's disposition order, Holden was returned to Ariel's custody and the CINA case was closed. Although Ariel did not mention this in her opening brief and advise us that her appeal technically was moot, OCS did and urged us to consider the appeal under the collateral consequences exception to mootness, noting a different appeal pending before us that raised this issue. We have issued our opinion in that matter. *See Reed S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, ___P.3d ___, Op. No. 7637, 2022 WL 17999271 (Alaska Dec. 30, 2022) (concluding that technically moot appeal from adjudication order should be considered on its merits in light of potential collateral consequences arising from order). Ariel's failure to raise the issue in this case is therefore harmless. We nonetheless expect the parties to notify us when an appeal is technically moot so that a determination can be made whether to consider the merits of the issue on appeal.

[2]    We use pseudonyms in this case to protect the family's privacy.

The caseworker reported that the house smelled of marijuana and Ariel smelled of alcohol. Ariel admitted that she sometimes left her children alone while they slept so she could go outside and smoke marijuana or drink shots of liquor.

OCS created a safety plan that allowed Ariel's brother to continue caring for the children and established a family contact plan for Ariel to maintain contact with the children. OCS filed a non-emergency petition for custody of both children. The petition alleged that the children were in need of aid on several grounds: physical harm,[3] neglect,[4] and substance abuse.[5]

The petition described OCS's history with Ariel and her family. It described an unsubstantiated report from January 2020 that Ariel had driven a vehicle with Alanna in it while so intoxicated by marijuana that she slurred her words. It also described Ariel's recent alcohol overdose and included the impression of the caseworker who had visited her at home. The caseworker noted Ariel's "strong smell of alcohol," "red and watery" eyes, "slurred speech," and that Ariel was "very unsteady on her feet."

The petition alleged that Ariel had told the caseworker she "drank a considerable amount of alcohol when she drinks," left her home to drink after the children went to bed, and cared for the children after consuming alcohol. According to the petition Ariel also admitted to "infrequent" marijuana use and to having a history of methamphetamine abuse and acknowledged that she had been convicted in the past of driving while under the influence.

Following an initial hearing in October, a probable cause hearing was eventually held in mid-December. In the meantime OCS referred Ariel to services to address her substance abuse. OCS referred Ariel for an integrated substance abuse and

---

[3]     AS 47.10.011(6).

[4]     AS 47.10.011(9).

[5]     AS 47.10.011(10).

mental health assessment, referred her to Alcoholics Anonymous (AA) meetings, arranged random urinalysis (UAs) to test for drugs and alcohol, and established a visitation schedule for Ariel and the children, who remained with her brother. Ariel completed the assessment in late October. The assessor diagnosed Ariel with moderate alcohol-use disorder, stimulant-use disorder in remission (related to prior amphetamine use), adjustment disorder with depressed mood, and attention deficit hyperactivity disorder. The assessor noted that Ariel may have underreported her alcohol use, which made it difficult to determine the appropriate level of care. OCS sent an application for substance abuse treatment to Ariel and her attorney in November.

Ariel was hospitalized in December while detoxing from alcohol. After her release Ariel applied for substance abuse treatment at Serenity House Medical Clinic. OCS sent the completed assessment to Ariel in December and created a case plan that required Ariel to follow Serenity House's recommendations, submit to random UAs, consistently visit her children, complete a parenting course, and sign releases of information for OCS to monitor her progress. OCS continued to provide for the children's medical needs, supervise visits between Ariel and the children, and maintain contact with Ariel and her attorney. OCS determined that Ariel required "a high-level need of supervision for multiple reasons," including inappropriate communication with the children during visits and UA results that showed she was "highly intoxicated." OCS asked that its office where Ariel's brother lived supervise in-person visitations.

Ariel enrolled in outpatient treatment at Serenity House in January 2021. She relapsed by the end of January and did not attend required group sessions. In February Serenity House recommended inpatient treatment because of Ariel's failure to "abstain from substances" in outpatient treatment, her lack of attendance, her lack of awareness about her own substance abuse, and "her pre-contemplation stage" regarding treatment.

OCS updated its family contact plan for Ariel in February 2021. Serenity House discharged her from treatment in mid-February for noncompliance and low

-4- *1944*

motivation, noting that Ariel did "not agree with the level of care increase to residential" and that she was "not ready for treatment." Ariel continued to attend AA meetings and parenting courses and generally complied with UAs following her discharge.

Ariel testified at the placement review hearing in April 2021 that she had been sober for two months, consistently attended AA meetings since early 2021, and was taking naltrexone to ease her alcohol cravings.[6] In May OCS updated Ariel's case plan and made additional referrals.

## B.    Proceedings

An adjudication hearing was held in May and June 2021. The superior court found by a preponderance of evidence that Holden and Alanna were children in need of aid under AS 47.10.011(10) due to Ariel's substance abuse. The court also found that OCS had made reasonable efforts to reunify the family, but it was contrary to the children's welfare to return them to Ariel's home. The children were placed in OCS custody pending the disposition hearing in October. Before the disposition hearing OCS filed and the superior court granted a petition to release custody of Alanna to her father.

OCS placed Holden with Ariel on a trial home visit at the end of August; he remained with her through the start of the disposition hearing. At disposition OCS called the assigned caseworker as a witness and requested an extension of custody for 30 days to monitor Ariel's continued progress before closing the case. The court granted the requested extension, noting that although Ariel had been sober since February, she had not finished substance abuse treatment and an immediate release would not be in Holden's best interests.

---

[6]     During this hearing Alanna's father informed the court that he applied for custody.

At a final status hearing in November, the superior court released custody of Holden to Ariel and closed the case. Ariel appeals the adjudication and disposition orders.

## III. STANDARD OF REVIEW

In a CINA case, we review a superior court's findings of fact for clear error.[7] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us 'with a definite and firm conviction that a mistake has been made.' "[8] When reviewing factual findings, "we ordinarily will not overturn a trial court's finding based on conflicting evidence"[9] and will not re-weigh evidence "when the record provides clear support for the trial court's ruling."[10]

We review de novo whether a trial court's findings satisfy the requirements of CINA statutes and rules.[11] A decision to admit expert testimony is reviewed for abuse of discretion.[12] "We reverse only if upon review of the record as a whole, we are left

---

[7] *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004).

[8] *Id.* (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

[9] *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003).

[10] *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

[11] *D.H. v. State, Dep't of Health & Soc. Servs.*, 929 P.2d 650, 654 n.11 (Alaska 1996); *Sherman B. v. State, Dep't of Health & Soc. Servs.*, 310 P. 3d 943, 949 (Alaska 2013).

[12] *Lynden Inc. v. Walker*, 30 P.3d 609, 612 (Alaska 2001).

with a definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party."[13]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Clearly Err By Finding That Holden Was A Child In Need Of Aid.

Ariel argues that her substance abuse "did not rise to the level that Holden was in need of aid pursuant to AS 47.10.011(10)" and claims that the children were not in her care when she passed out on the four-wheeler.

OCS's petition alleged three bases for finding Ariel's children in need aid: the risk of physical harm,[14] neglect,[15] and substance abuse.[16]  But the superior court found that Holden was in need of aid based solely upon Ariel's substance abuse.  A single statutory basis is sufficient to find a child in need of aid,[17] and the court may find a child in need of aid based on parental substance abuse if the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."[18]  The court may "rely on a parent's documented history of conduct as a

---

[13]     *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000); Alaska R. Civ. P. 61.

[14]     AS 47.10.011(6).

[15]     AS 47.10.011(9).

[16]     AS 47.10.011(10).

[17]     *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 651 (Alaska 2003).

[18]     AS 47.10.011(10).

predictor of future behavior."[19]  OCS bears the burden of proof by a preponderance of the evidence.[20]

The superior court recognized that the "evidence indicates that [Ariel] loves her children" and is a skilled parent when sober.  But based upon the evidence of Ariel's substance abuse history, the court found that "[Ariel's] conduct recently caused her to be unavailable to parent when she was unconscious, hospitalized and recovering. [Ariel's] conduct in the past, when she was arrested, caused her to be unavailable . . . . [and her] substance abuse was entirely responsible for both of these incidents and impaired her parenting."

Ariel also argues that the superior court considered inadmissible hearsay evidence to support its finding that Holden was in need of aid.  She argues that the court erred by considering her hospital and substance abuse treatment records (Exhibit 17) and the assessment that she had obtained (Exhibit 19) because they were hearsay.  Ariel objected to the records' admission on an additional ground — asserting that our decision in *Cora G. v. Department of Health & Social Services, Office of Children's Services*[21] required OCS to present expert testimony to prove that Holden was at risk of mental injury from parental substance abuse.  She asserted that without the testimony of an expert, the records could not be the basis for the court to find Holden in need of aid under AS 47.10.011.

The superior court took the matter under advisement before admitting the exhibits under Evidence Rules 902 (self-authenticating documents) and 803(6) (business records).  The court did not abuse its discretion.

---

[19]     *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003) (terminating parental rights where a mother failed to remedy conduct or conditions that placed children at substantial risk of harm).

[20]     Alaska CINA Rule 15(c).

[21]     461 P.3d 1265 (Alaska 2020).

Ariel's argument that *Cora G.* required OCS to present expert testimony mischaracterizes the superior court's finding. While *Cora G.* does require expert testimony to prove a child's *mental injury* from parental substance abuse, the superior court found that Holden was in need of aid because Ariel's substance abuse had "resulted in a substantial risk of *harm*." The statute did not limit the superior court to finding that the harm Holden faced was mental injury; *Cora G.*'s requirement does not apply. The superior court did not abuse its discretion by admitting the exhibits.

The evidence demonstrated that Ariel had passed out while riding a four-wheeler with her two-year-old daughter and a friend and had been hospitalized with a potentially lethal blood alcohol level of 465 mg/dL.[22] The record also confirmed that Ariel has struggled with substance abuse since she was a teenager. She admitted in her testimony that she consumed alcohol when caring for her children; she tested positive or failed to provide multiple UAs during the pendency of this case. Although Ariel argues that she rebutted the information in her treatment records when she testified, "it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[23] The evidence supports the superior court's finding that Holden was in need of aid because Ariel's substance abuse resulted in a substantial risk of harm to him. The court did not clearly err.

### B. The Superior Court Did Not Err By Finding That OCS Made Reasonable Efforts To Reunify The Family.

Ariel argues OCS failed to make reasonable efforts to reunify her family and points to several failures: its delay in providing Ariel's assessment in discovery;

---

[22] RANDI MINETOR, MEDICAL TESTS IN CONTEXT 54 (2019) (classifying blood alcohol levels of 400 mg/dL or higher as potentially lethal).

[23] *Tessa M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 182 P.3d 1110, 1114 (Alaska 2008) (citation omitted).

its failure to provide more visits with Holden; and its failure to consider her friend, the driver of the four-wheeler, as a placement for her children.

OCS must make "timely, reasonable efforts" to maintain a child in the family home or to enable the safe return of the child to the home after removal.[24] OCS must identify family support services to help the parent remedy the conduct or conditions that caused the child to be in need of aid, actively offer and refer the parent to those services, and document its actions.[25] Determining whether OCS has met its burden is a mixed question of fact and law,[26] and we look at the entirety of OCS's involvement with the family.[27] OCS may be found to have made reasonable efforts even if a parent fails to take advantage of offered services.[28]

OCS made various efforts to assist Ariel, including preparing a case plan; referring her for an assessment, UAs, and substance abuse treatment programs, including AA; arranging visits; and assisting her with transportation. It also kept Ariel's children with her brother, where the family had placed them when Ariel was hospitalized. And OCS ensured that the children's medical and educational needs were met.

---

[24]     AS 47.10.086(a).

[25]     AS 47.10.086(a)(1)-(3). Family support services are "services and activities provided to children and their families, including those provided by the community, a church, or other service organization, both to prevent removal of a child from the parental home and to facilitate the child's safe return to the family . . . [and] may include counseling [and] substance abuse treatment." AS 47.10.990(11).

[26]     *N.A. v. State, DFYS*, 19 P.3d 597, 601 (Alaska 2001).

[27]     *Doug Y. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 243 P.3d 217, 226 (Alaska 2010); *see Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003).

[28]     *See T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 26 P.3d 1089, 1094 (Alaska 2001).

The date on which Ariel received a copy of her assessment from OCS is disputed, but there was a delay. Ariel participated in the assessment in late October; the assessor signed it two weeks later in mid-November. OCS claimed it did not receive the assessment until December, about a week before the probable cause hearing. It provided a copy to Ariel on December 30. Ariel enrolled in recommended substance abuse treatment in January 2021. The superior court seemingly attributed some of her delay in beginning treatment to OCS's delay in providing the assessment, noting in its adjudication order that Ariel was only partly at fault for her delay in achieving sobriety. But the delay in distribution of the assessment does not mean that OCS failed to make reasonable efforts. OCS promptly offered and referred Ariel to services and documented its actions.[29]

OCS is required to "provide reasonable visitation,"[30] as Ariel asserts, and the superior court noted that visitation was a "constant problem." The court attributed the difficulty to a number of factors: Ariel's "strained relationship" with her brother who was caring for the children in a different community, as well as the difficulty of providing in-person visits during the pandemic. And OCS presented evidence that because Ariel violated visitation policy during her visits with the children, she required "a high-level . . . of supervision," which presented another difficulty in light of pandemic restrictions. As a result Ariel had two 30-minute Zoom meetings a week with Holden. Although the visits were not ideal, as the superior court noted, Ariel was provided a reasonable opportunity to visit with Holden.

Finally, Ariel argues that OCS should have "vetted" the driver of the four-wheeler with whom she lived in order to return the children home under his care,

---

[29] *See* AS 47.10.086(a).

[30] AS 47.10.080(p).

because "allowing the children to stay in the home with their mother should have been a priority." We have recognized that OCS has reasonable discretion to decide where a child is placed,[31] and we review its decision only for an abuse of discretion.[32]

OCS did not remove the children from Ariel's care: her mother did when Ariel was hospitalized with a potentially lethal level of alcohol in her system. Family members have the highest priority for placement in CINA cases.[33] And OCS vetted Ariel's brother to ensure the children could stay there safely together when OCS became involved. OCS did not abuse its discretion by failing to evaluate whether the children could be placed in her friend's care at her home.

OCS's efforts were not perfect, nor were they required to be. The superior court did not err by finding OCS made reasonable efforts to reunify Ariel with Holden.

## C. The Superior Court Did Not Abuse Its Discretion Extending OCS Custody For 30 Days.

Ariel argues that the superior court should not have extended OCS custody of Holden for an additional 30 days after disposition.

Pending disposition, a court may approve the continued removal of a child only if returning the child home would be "contrary to the welfare of the child."[34] In subsequent hearings, the court considers whether OCS has made reasonable efforts to

---

[31] *In re B.L.J.*, 717 P.2d 376, 380 (Alaska 1986).

[32] *Id.* at 380-81.

[33] Under AS 47.14.100(e)(3) placement priorities are, in order, an adult family member; a family friend who meets the foster care licensing requirements; another licensed foster home; or an institution for children with a suitable program to meet the child's needs.

[34] CINA Rule 10(e)(2)(A).

prevent an out-of-home placement[35] since the last hearing.[36] OCS maintains "some discretion in determining what efforts to pursue and whether the timing is reasonable,"[37] as long as OCS does not unduly prolong the removal and unnecessarily burden a child's need for permanency.[38]

At adjudication the superior court found that returning Holden home was contrary to his welfare because of Ariel's "tendency to minimize the impact chronic intoxication can have on her children, even if there are other sober caretakers, combined with her long history of substance abuse, and lack of treatment." By the time of the disposition hearing in October, Holden was on a trial home visit with Ariel. OCS requested an additional month of custody to support and monitor Ariel in her ongoing treatment and counseling to ensure a smooth transition for Holden. The superior court found that although Ariel had been sober since February, she had not finished substance abuse treatment and an immediate release of custody would not be in Holden's best interests. The court therefore "extend[ed] custody . . . for 30 days and trust[ed] that [Ariel was] going to continue doing what she's doing, and the department will dismiss." This is exactly what happened a month later when the court released custody and closed the case.

In light of Ariel's longstanding history of substance abuse, the superior court did not abuse its discretion by extending OCS custody for an additional 30 days post-disposition.

---

[35]    CINA Rule 10.1(a)(1)(B).

[36]    CINA Rule 10.1(a)(1)(C).

[37]    *Sean B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 251 P.3d 330, 338 (Alaska 2011).

[38]    *Sherry R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 332 P.3d 1268, 1277 (Alaska 2014).

## V. CONCLUSION

We AFFIRM the superior court's decision.